Filed 5/28/14  P. v. Ward CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL SHANE WARD,<br><br>　　Defendant and Appellant. | 2d Crim. No. B243098<br>(Super. Ct. No. 1351702)<br>(Santa Barbara County) |

　　　　　　Michael Shane Ward (appellant) and Jane Doe had a tumultuous relationship.  From September to the beginning of November 2010, the relationship became more physically abusive, culminating in two days of sexual and physical attacks by appellant upon Doe.   He appeals from the judgment following his conviction by jury of kidnapping (Pen. Code,[1] § 209; count 1); forcible rape (§ 261, subd. (a)(2); count 6); corporal injury upon a former cohabitant (former § 273.5, subd. (a); counts 2, 3, 4, 13 & 14); dissuading a witness by force or threat (§ 136.1, subd. (c)(1); counts 5 and 11); misdemeanor false imprisonment (§ 236; count 8); misdemeanor witness dissuasion

_____

[1] All statutory references are to the Penal Code unless otherwise stated.

(§ 136.1, subd. (b); count 12); and false impersonation (§ 529; count 15).[2] The jury acquitted appellant of two forcible rape charges (counts 9 and 10) and one count of dissuading a witness by force or threat (count 7). It found true allegations that he used a knife in the kidnapping and the count 4 corporal injury; that he inflicted great bodily injury on the victim in the kidnapping and all three corporal injury offenses; and that he had served a prior prison term (§ 667.5, subd. (b)). The trial court sentenced appellant to 32 years 4 months in prison.

Appellant contends he was denied the effective assistance of counsel; the trial court erred by failing to give a unanimity instruction concerning false imprisonment; and the court violated section 654 by imposing sentences for crimes which shared the same objective. We reverse the false imprisonment and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Doe was in a romantic relationship with appellant for nearly a year. They lived together at times. On several occasions they became violent, and pushed or threw each other, which sometimes caused bruising. They started to break up in the summer of 2010.

*October 31, and November 1, 2010, Crimes*

On Halloween night, appellant and Doe were drinking at Elmer's Bar. They were arguing in his car, in the bar parking lot. Appellant told Doe she looked like a "whore" in her Halloween costume and she needed to get out of his car. When she tried to get out, appellant grabbed her hair to pull her back inside. Doe asked appellant to drive her two blocks away, where she had parked her car. It was between 10:00 p.m. and midnight and dark outside.

Instead of driving to Doe's car, appellant said he was taking her to a field to "beat the shit out" of her. He drove about a mile to Graciosa Road, an isolated frontage road, where there were no other people or cars. He pulled Doe from his car, forced her to the ground, and repeatedly hit her face with his fists. Her head struck the ground. Using

_____

[2] The jury convicted appellant of lesser included offenses of those charged in counts 1, 8 and 12.

2

both hands, appellant strangled Doe, and she struggled to breathe. He asked if she was "fucking" someone, and asked her about a man who sent text messages to her phone. There was blood in her throat, and she had difficulty breathing. She also had multiple bruises and scratches.

Appellant dragged Doe back to his car and drove toward Chilli Hill, another isolated area, while he repeatedly punched her in the face. They reached Chilli Hill in about five minutes. Appellant "rip[ped]" Doe from his car, pushed her to the ground, and got on top of her. He punched and strangled her as she lay there. Following this attack, she had difficulty breathing.

Doe saw headlights approaching. Appellant said he did not want to go to prison. Doe tried to escape, but appellant grabbed her hair and pulled her back. She took his car keys, pushed the panic alarm, and threw the keys as far as she could. She tried without success to reach an area where she would be visible in the other car's headlights. When that car left, appellant dragged Doe to his car at knifepoint, with his arms encircling her chest. She felt the knife "nick" her.

The next thing Doe remembered was "being on the passenger side" of appellant's car while he was on the driver's side "throwing up." He again said he did not want to go to prison. He offered to hand his knife to Doe if she would get in his car. She accepted it and entered the car. Shortly thereafter, she returned the knife to appellant.

Appellant drove from Chilli Hill to his father's house, where he was living. He showered with Doe and they went to bed. The next day, she awoke with appellant on top of her. They had intercourse. Before trial, Doe told an investigator she had sex with appellant because she feared she would not be safe if she refused. At trial, she testified their sex was consensual.

Doe and appellant snuck away from his father's house in the afternoon on November 1, in his father's car. He drove Doe to her friend's house, where she had left her car. He said he was not "ready to part ways," and they decided to go to a motel. He left Doe alone at her friend's house, on the front porch, where she would not be seen.

While he was gone, Doe used her cell phone to call a friend. She then fell asleep on the porch.

Appellant returned and took Doe to the Villa Motel in Santa Maria. Doe felt pressure in her head, and her body was aching. She and appellant had intercourse at the motel. She told investigators that she had sex with him because she feared he would become violent again. He would not let Doe leave the motel room. He told her he still did not feel like letting her go. She had to promise she would not go to the police before he let her leave.

On November 2, 2010, when Santa Barbara Sheriff's Department Deputy Edward Moss interviewed Doe, her eyes were discolored. She also had several bruises and scrapes. Doe told Moss she had sex with appellant because she feared the situation would escalate. During a recorded telephone conversation, appellant demanded that Doe tell him what she told police. He told her to just say, "[L]ook, dude, I was fucked up. I don't remember shit." The recorded telephone conversation was played for the jury.

*Prior Domestic Violence*

Appellant's former girlfriend, J.L., testified that he visited her apartment in March 2009, after they broke up. Appellant tried to kiss J.L. and she told him to stop. He became angry, grabbed her iPod and feigned throwing it down. She tried to hold her cell phone to prevent his throwing it. They struggled over the phone, until appellant managed to grab, throw and damage it. During the struggle, appellant bruised J.L.'s throat and eyes.

DISCUSSION

*Ineffective Assistance of Counsel*

Appellant contends he was denied the effective assistance of counsel because trial counsel failed to request bifurcation of the section 667.5, subdivision (b) prior prison allegation proceedings. We disagree.

"The burden of proving ineffective assistance of counsel is on the defendant. [Citation.]" (*People v. Babbitt* (1988) 45 Cal.3d 660, 707.) "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant

4

must show that the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

Anticipating that the jury would learn of appellant's prison priors anyway when Doe testified about "statements that [appellant] made while they were up on either Chilli Hill or Graciosa," trial counsel made a tactical decision not to request bifurcation. Counsel referred to the convictions in his opening statement to the jury in an apparent attempt to blunt the negative impact of the prison priors. Tactical errors are not generally grounds for reversal. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Moreover, appellant has failed to "show that there is a reasonable probability that, but for counsel's" claimed incompetence, "the result of the proceeding would have been different." (*Strickland v. Washington, supra*, 466 U.S. at p. 694.) He argues counsel's failure to request bifurcation of the prior prison proceedings was prejudicial, particularly with respect to the rape because the evidence of that crime was weak, and it was harmful for the jury to consider evidence of his convictions, parole violations and imprisonment. The state prison materials that were submitted to the jury show appellant was convicted of second degree commercial burglary and grand theft, and returned to prison several times for parole violations. However, they do not state or suggest he was ever convicted of, or charged with, forcible rape, or any rape, or any violent sex offense. It is not reasonably probable that the outcome of appellant's trial would have been different if counsel had requested bifurcation of the prior prison allegation proceedings.

*Unanimity Instruction*

Appellant was charged in count 8 with kidnapping for the purpose of rape. (§ 209, subd. (b)(1).) The jury, however, convicted him of the lesser included offense of false imprisonment. Appellant contends the trial court erred in failing to give jurors a unanimity instruction concerning count 8 because there was evidence of multiple acts, any one of which a juror could have used as the basis for his conviction for misdemeanor false imprisonment. He is correct.

The California Constitution guarantees a criminal defendant the right to a unanimous jury verdict. (*People v. Jones* (1990) 51 Cal.3d 294, 321; Cal. Const., art. I,

5

§ 16.)  In order to find a defendant guilty of a particular crime, the jurors must unanimously agree that the defendant committed the same specific act constituting the crime.  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  If the prosecution presents evidence of several acts, each of which could constitute a separate offense, a unanimity instruction is generally required, unless the prosecution elects one of the acts as the basis for the charged offense.  (*People v. Benavides* (2005) 35 Cal.4th 69, 101; *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 (*Melhado*).)  No instruction is required "when the acts are so closely connected that they form part of one and the same transaction."  (*People v. Avina* (1993) 14 Cal.App.4th 1303, 1309.)

When a unanimity instruction is required, the court has a sua sponte obligation to give it.  (*People v. Riel* (2000) 22 Cal.4th 1153, 1199; *Melhado, supra,* 60 Cal.App.4th at p. 1534.)  "'We review de novo a claim that the trial court failed to properly instruct the jury on the applicable principles of law.  [Citation.]'"  (*People v. Lueth* (2012) 206 Cal.App.4th 189, 195.)

The prosecutor argued that count 8, which charged appellant with kidnapping for the purpose of rape on November 1, 2010, was based on evidence that he "transport[ed], mov[ed Doe] from [his] father's house to the porch where no one was home and then from there to the Villa Motel."  Doe testified that he left her alone for about an hour on the porch of her friend's house, with her car and cell phone.  Appellant thus argues the jury could have based its count 8 false imprisonment verdict on one of various acts he committed, including taking Doe from his father's house to her friend's house, and picking up Doe at her friend's house and driving her to the motel.

In *People v. Haynes* (1998) 61 Cal.App.4th 1282, the defendant helped rob a victim of cash in a parking lot, then followed the victim for several blocks and accosted him again to take more cash.  (*Id*. at pp. 1286, 1294-1296.)  The *Haynes* court concluded no unanimity instruction was required because the defendant's acts were part of a single transaction.  The acts had occurred "just minutes and blocks apart and involved the same property[;]" and "were successive, compounding" acts with "a single objective of getting all the victim's cash."  (*Id*. at p. 1296.)  In contrast, the prosecution below relied on

multiple acts, which were not closely connected in time. Some of the acts preceded a temporal break of approximately one hour, when appellant left Doe alone. During that time, he left her with access to her cell phone and car, which did not "compound" his earlier conduct. (*Ibid*.) Other acts upon which the jury may have based its false imprisonment verdict occurred after that temporal break. The prosecution did not elect a specific act upon which it based the count 8 charge. Absent that election, the trial court was required to instruct the jury that it must unanimously agree on the act underlying its count 8 verdict. As the record stands, it is unclear that "each juror agreed on the particular criminal act that formed the basis for the [count 8] verdict." (*Melhado, supra*, 60 Cal.App.4th at pp. 1535, 1536 [unanimity instruction required where there was evidence of multiple threats upon which a juror based the criminal threat conviction].) We will reverse the misdemeanor false imprisonment.

*Section 654 Claims*

Appellant claims the trial court violated section 654 by imposing sentence for both kidnapping (count 1) and the counts 2, 3 and 4 corporal injury crimes, and by imposing sentence for both the count 4 corporal injury crime and the count 5 charge of witness dissuasion. We disagree.

Section 654 prohibits the imposition of multiple punishments for the same act or omission; it does not bar multiple punishments for multiple violations of the same statute or for acts committed incident to multiple criminal objectives. (*People v. Correa* (2012) 54 Cal.4th 331, 340-341; *People v. Rodriguez* (2009) 47 Cal.4th 501, 507.) "[T]he purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability." (*Correa,* at p. 341.) "Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of

7

every fact the court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

"[W]hen [a] defendant pauses and, having the option to land another blow or to break off the attack, chooses the former course of action, his culpability increases and his intent, though the same in kind, can be considered separate and distinct . . . ." (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368, fn. 4.) He should not "'. . . be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.' [Citation.]" (*Id*. at p. 368.)

Appellant claims that his October 31, and November 1, 2010, kidnapping and corporal injury crimes shared a single, common objective of beating "the shit" out of Doe, and constituted an "indivisible" course of conduct for purposes of section 654. The record belies his claim. There were multiple pauses in the violent acts appellant committed at three distinct locations during and after the kidnapping. Substantial evidence supports the trial court's implied findings that appellant had the opportunity to reflect on his actions and decide whether to continue his assaultive behavior between the assaults, and each crime was a discreet act with a distinct intent.

Appellant makes the related claim that the trial court violated section 654 by sentencing him for both the count 4 corporal injury and the count 5 witness dissuasion, and he argues those crimes shared the same intent and objective. In his supplemental brief, he argues that because those crimes shared a common factual basis, use of a knife, section 654 bars separate punishments for the two crimes. Again, we disagree.

Even if the corporal injury and dissuasion involved the use of one knife, that factor does not establish that appellant had a single intent and objective in committing the two crimes. If the "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, *'even though the violations shared common acts* or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335, italics added.)

8

Unlike the corporal injury offense, witness dissuasion by force or threat does not require that a defendant inflict physical injury upon the victim. (§ 136.1, subds. (b)(1), (c).) The jury did not necessarily find that appellant used the knife in order to convict him of witness dissuasion. The prosecutor's argument concerning count 5 included multiple bases upon which the jury could have found appellant used force to dissuade Doe from reporting the crime: "So the defendant is beating, strangling, handling a knife to prevent Jane Doe from reporting. This is Count 5." Substantial evidence supports the court's implied finding that appellant's intent to dissuade Doe from reporting the crimes (e.g., to avoid prison) was separate from his intent to injure her.

## DISPOSITION

The misdemeanor false imprisonment conviction is reversed. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

9

Kay Kuns, Judge

Superior Court County of Santa Barbara

_____

Susan Pochter Stone, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Stephanie A. Miyoshi, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.