[No. E053476. Fourth Dist., Div. Two. May 22, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC PRESTON LUETH, Defendant and Appellant.

COUNSEL

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Ronald A. Jakob, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

RICHLI, J.—A 911 caller reported seeing defendant Eric Preston Lueth using a tire iron to hit a woman and to damage a vehicle. When the police arrived, defendant's girlfriend had a rapidly swelling bump on her forehead, and her Jeep was damaged. Defendant was bleeding from a cut on his head. The girlfriend refused to tell the police what had happened. At trial, however, she testified that defendant did hit her, but indoors, with his fist; she did not remember being hit outdoors, with a tire iron.

A jury found defendant guilty of aggravated assault (Pen. Code, § 245, subd. (a)(1)), inflicting corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)), and vandalism (Pen. Code, § 594, subd. (b)(2)(A)). He admitted

one "strike" prior (Pen. Code, §§ 667, subds. (b)–(i), 1170.12) and two 1-year prior prison term enhancements (Pen. Code, § 667.5, subd. (b)). He was sentenced to a total of 10 years in prison, plus the usual fines and fees.

Defendant's sole appellate contention is that the trial court erred by refusing to give a unanimity instruction on the charge of inflicting corporal injury on a cohabitant. Our analysis is complicated by the fact that the case law does not clearly or consistently define the unit of prosecution under Penal Code section 273.5. According to *People v. Thompson* (1984) 160 Cal.App.3d 220 [206 Cal.Rptr. 516], the evidence in this case showed only a single instance of this crime; accordingly, a unanimity instruction was not required. On the other hand, according to *People v. Johnson* (2007) 150 Cal.App.4th 1467 [59 Cal.Rptr.3d 405], the evidence showed at least two instances of this crime; accordingly, a unanimity instruction was required, but, on this record, the error was harmless. As the outcome either way is an affirmance, we need not decide whether *Thompson* or *Johnson* is correct.

I

FACTUAL BACKGROUND

A. *The Prosecution Case.*

1. *The police investigation.*

On September 21, 2009, one Allan Curnutte called 911 and reported that "a guy with a tire iron [was] beating the hell out of a woman." That guy had also "punched out" the tire of a vehicle. Curnutte identified the guy as his neighbor, "Eric."

When the police responded, defendant was standing in the doorway of a house. He was covered in blood from "[a] minor head injury." He was "agitated" and uncooperative. The police used a Taser to subdue him.

The windshield of a nearby Jeep was broken; one of its tires had puncture marks and was flat. Defendant admitted causing the damage to the Jeep.

The police interviewed the victim, Angela Rapp. They noticed a "big ole bump on [Rapp's] forehead" that was "growing by the minute." A photograph of Rapp, showing the bump, was in evidence. Rapp told police that she had gotten into an argument with defendant. Otherwise, however, she refused to tell them anything.

Defendant's brother, Travis Sihock, told police that defendant and Rapp came inside the house. Defendant was covered in blood; Rapp was crying. Defendant pushed her to the floor, held her down, and yelled at her, but he did not hit her.

Defendant's mother, Joyce Sihock, told police that she "didn't witness the incident . . . ."

The police did not find a tire iron.

### 2. *Curnutte's testimony at trial.*

At trial, Curnutte identified defendant as the guy with the tire iron. He admitted that, technically, he did not see defendant hit the woman. Rather, the woman disappeared from his view, evidently falling to the ground. He then saw defendant swinging a tire iron down in the area where the woman had fallen, while the woman was "yelling and screaming [and] crying."

According to Curnutte, defendant flattened one of the Jeep's tires by hitting it with the tire iron; he then used the tire iron to break the windshield.

### 3. *Rapp's testimony at trial.*

Rapp testified that, as of 2009, she was defendant's girlfriend. She lived with him in a motor home behind his mother's house.

On September 21, 2009, Rapp told defendant that she did not want to live with him. This led to an argument. Defendant threatened to hurt himself. At one point, he broke a coffee cup over his own head, which caused him to bleed.

The argument "moved outside." Defendant broke the windshield of Rapp's Jeep and slashed two of the tires. According to Rapp, he used a knife to slash the tires; she did not know how he broke the windshield. She did not remember defendant hitting her while they were outside. She added, however, ". . . I don't remember the outside period clearly."

Rapp then ran into the house. Defendant followed her in. He "started beating [her] head" with his fist.

According to Rapp, after the photograph of her bump was taken, her injuries got worse; she had bumps all over the back of her head, and her "whole face was black and blue."

At trial, she explained that she did not tell the police anything because she was "scared."

### 4. Uncharged domestic violence.

Defendant's previous girlfriend, Jennifer Houser, testified that, during their relationship, defendant physically abused her "every week [or] every other week." He slapped her, choked her, and, on one occasion, broke her nose.

## B. *The Defense Case.*

### 1. Testimony of defendant's brother, Travis Sihock.

Defendant's brother testified that, when defendant came inside the house, "[t]here was blood gushing from his head." Rapp came in yelling and "saying a bunch of crap . . . ." She sat down and started slapping herself in the forehead. Defendant pushed her to the floor and held her down by the arms, but he did not hit her.

At that point, Rapp had no visible injuries. However, "[a]fter the cops left[,] when she came out of the bathroom," there was a lump on her head. Sihock claimed Rapp later admitted to him that she hit defendant on the head with a coffee cup.

### 2. Testimony of defendant's mother, Joyce Sihock.

Defendant's mother testified that, when defendant and Rapp came in the house, they were both yelling. Defendant "had blood all over his head." He held Rapp's arms to calm her down. While "wrestling," they "roll[ed] off the couch."

After the police took defendant outside, Rapp went into a bathroom. Defendant's mother heard banging sounds. When Rapp came back out, there was a knot on her forehead. Rapp admitted hitting herself on the counter in the bathroom.

### 3. Testimony of Julie Beth Rossiter.

Julie Beth Rossiter was acquainted with both defendant and Rapp. She testified that in January or February 2010, she talked to Rapp about the incident. Rapp told her that, during an argument, she hit defendant in the head with a coffee cup, causing him to bleed. When the police came, Rapp

"knew that she would be in trouble if only [defendant] had injuries," so she hit her own head on a bathroom sink. She then told the police that defendant had assaulted her.

### 4. *Testimony of Troy Lockhart.*

Troy Lockhart knew both defendant and Rapp. He testified that Rapp told him that she went into a bathroom and hit herself on the forehead.

## II

## UNANIMITY INSTRUCTION

As noted, defendant contends that the trial court erred by refusing his request for a unanimity instruction.

### A. *Additional Factual and Procedural Background.*

Defense counsel requested a unanimity instruction (CALCRIM No. 3500) with respect to count 2 (inflicting corporal injury on a cohabitant). She argued that the "273.5 could have happened outside in the yard or could have happened in the house." The trial court refused to give the instruction.

In closing argument, the prosecutor argued that defendant was guilty on count 2 because he hit Rapp with a tire iron and also with his fist, as follows: "Then we move on to the domestic violence, the inflicting injury on a cohabitant. He willfully inflicted a physical injury on her and that injury resulted in a traumatic condition. So let's go through that. Willfully inflicted the physical injury on her, he punched her numerous times. She told you that. He swung a tire iron at her. That injury resulted in a traumatic condition. We saw the bruise on her forehead, and she testified that she was bruised up days later, that she had bruising on her face more than just the forehead."

### B. *Analysis.*

"We review de novo a claim that the trial court failed to properly instruct the jury on the applicable principles of law. [Citation.]" (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 850 [128 Cal.Rptr.3d 565].)

"In a criminal case, a jury verdict must be unanimous. [Citations.] . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the

same criminal act. [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 [108 Cal.Rptr.2d 436, 25 P.3d 641].)

"On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty. [Citation.]" (*People v. Russo, supra*, 25 Cal.4th at p. 1132.)

There are cases that refer to a "continuous-course-of-conduct exception" to the requirement of a unanimity instruction. (E.g., *People v. Jennings* (2010) 50 Cal.4th 616, 679 [114 Cal.Rptr.3d 133, 237 P.3d 474].) Actually, this is a catch-all term, which, somewhat confusingly, embraces two wholly distinct principles.

■ First, the continuous-course-of-conduct exception applies " 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time' [citation]." (*People v. Jennings, supra*, 50 Cal.4th at p. 679.) For example, where the defendant is charged with one count of continuous sexual abuse of a child (Pen. Code, § 288.5), even if based on a series of acts over time, a unanimity instruction is not required. (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1123–1126 [106 Cal.Rptr.3d 54].) As already noted, however, a unanimity instruction is not required when the evidence shows only one discrete crime. Thus, this is not really an *exception* to the requirement.

■ Second, the continuous-course-of-conduct exception applies when (1) "the acts are so closely connected in time as to form part of one transaction," (2) "the defendant tenders the same defense or defenses to each act," and (3) "there is no reasonable basis for the jury to distinguish between them. [Citations.]" (*People v. Crandell* (1988) 46 Cal.3d 833, 875 [251 Cal.Rptr. 227, 760 P.2d 423].) "This exception ' "is meant to apply not to all crimes occurring during a single transaction but only to those 'where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto.' [Citation.]" [Citation.]' [Citation.]" (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1011 [121 Cal.Rptr.3d 754].) Again, however, it is not at all clear that this is truly an *exception*. It would seem more accurate to say that, in this situation, a unanimity instruction is required, but the failure to give one is harmless. (See *People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1589 [124 Cal.Rptr.3d 363] [Fourth Dist., Div. Two] ["the omission of a unanimity instruction [is] harmless if the record reveals 'no rational basis . . . by which the jury could have distinguished between [the acts which would constitute the offenses]' "].)

Here, then, the threshold question is whether the evidence showed one instance of the crime of inflicting corporal injury on a cohabitant, or two. There are three relevant California cases.

The first is *People v. Thompson, supra,* 160 Cal.App.3d 220. In *Thompson,* there was evidence that the defendant beat his wife "frequently" for about a month; witnesses saw her with bruises, including both new and old bruises. (*Id.* at pp. 222–223.) The defendant was convicted on one count of inflicting corporal injury on a cohabitant. (*Id.* at p. 222.)

On appeal, the defendant argued that the trial court should have given a unanimity instruction. The appellate court held that the continuous course of conduct exception applied. (*People v. Thompson, supra,* 160 Cal.App.3d at pp. 224–226.) It acknowledged that there are two different versions of this exception; it relied on the one that applies when "the statute contemplates a continuous course of conduct of a series of acts over a period of time." (*Id.* at p. 224.) It analogized to cases holding that child abuse (Pen. Code, § 273d) is a continuous course of conduct offense (*Thompson,* at pp. 224–226): "Like child abuse, this is a case where each individual act may not amount to a crime, but the cumulative outcome is criminal. 'It is the continuing course of abuse which leads to prosecution and conviction.' [Citation.]" (*Id.* at p. 225.) "Furthermore, there are sound policy reasons supporting this interpretation. If this exception did not apply the prosecutor, not knowing which act would convince the jury of guilt, would separately charge each act of violence. Assuming the jury believed that a majority or all of the acts took place, a defendant would then be subject to a much longer sentence." (*Id.* at p. 226.)

The second case, *People v. Healy* (1993) 14 Cal.App.4th 1137 [18 Cal.Rptr.2d 274], purported to distinguish *Thompson.* There, the defendant beat one cohabitant "frequent[ly] and brutal[ly]" for "nearly a year," "causing severe injuries"; he beat a second cohabitant "daily" for "approximately two weeks." (*Id.* at p. 1139.) As a result, he was convicted on "numerous" counts of inflicting corporal injury on a cohabitant. (*Id.* at p. 1138.)

On appeal, he argued that, under *Thompson,* he could be convicted on only one count per victim. (*People v. Healy, supra,* 14 Cal.App.4th at p. 1139.) The appellate court disagreed. It stated: ". . . *Thompson* concerned the issue of a jury unanimity instruction . . . . *Thompson* ruled that section 273.5 contemplated a continuous course of conduct over time where each act might not be criminal but the 'cumulative outcome' was criminal. [Citation.] *Thompson* did not concern the prosecutor's power to charge multiple acts of abuse where, as here, each battery satisfied the elements of section 273.5 and constituted a crime. ' ". . . There is a fundamental difference between a

continuous crime spree and continuous conduct resulting in one specific offense . . . ." ' [Citation.]" (*People v. Healy, supra*, 14 Cal.App.4th at pp. 1139–1140.)

Third and finally, *People v. Johnson, supra*, 150 Cal.App.4th 1467 approached the issue afresh, without citing either *Thompson* or *Healy*. There, during a fit of anger, "[the defendant] punched [a cohabitant] in the nose, eyes, and mouth. He choked her and held her by her throat against the wall. He struck her on her neck, her arm, her lower back, and her leg. He also stabbed her in the left arm." (*Id.* at p. 1472.) As a result, the defendant was convicted on three counts of inflicting corporal injury on a cohabitant. (*Id.* at pp. 1471, 1473.)

■ The defendant argued that he could be convicted on only one such count, because the evidence showed "a 'single continuous assault,' albeit involving 'multiple blows.' " (*People v. Johnson, supra*, 150 Cal.App.4th at p. 1474.) The appellate court disagreed. It explained: "Any person who 'willfully inflicts' corporal injury upon a spouse or cohabitant is guilty violating section 273.5. The section is violated only if corporal injury results from the 'direct application of force on the victim by the defendant.' [Citation.] The statute proscribes a 'very particularized battery.' [Citation.] The essence of any battery is the touching of the victim. [Citation.] In section 273.5, the touching must result in bodily injury. Thus, evidence of one punch to the face resulting in a black eye would constitute a completed violation of section 273.5. We conclude, therefore, that the crime described by section 273.5 is complete upon the willful and direct application of physical force upon the victim, resulting in a wound or injury. It follows that where multiple applications of physical force result in separate injuries, the perpetrator has completed multiple violations of section 273.5." (*Id.* at p. 1477.)

Fortunately, we need not choose among these cases. They each lead to the same outcome, though for different reasons.

■ If *Thompson* is good law at all, it is controlling here. It held that Penal Code section 273.5 "contemplates a continuous course of conduct of a series of acts over a period of time" (*People v. Thompson, supra*, 160 Cal.App.3d at p. 224); hence, a series of beatings over nearly a month constituted only one statutory violation. If so, then, a fortiori, a beating with a tire iron followed almost immediately by a beating with a fist likewise constitutes only one statutory violation.

*Healy* does not require a different result. *Healy* did not take issue with *Thompson* when it comes to whether a unanimity instruction is required, but only when it comes to whether the prosecutor can charge multiple counts. We

may question whether this is a valid distinction; nevertheless, it means that the application of *Healy* is self-limited. Moreover, *Healy* involved repeated beatings over a longer span of time—a week with respect to one cohabitant and nearly a year with respect to the other. Thus, *Healy* simply does not tell us whether the evidence in this case—which shows, at most, back-to-back beatings during a single argument—adds up to one crime or two.

Finally, under *Johnson*, the trial court did err, but the error was harmless. *Johnson* looked to the number of injuries separately inflicted on the victim. Here, there was undisputed photographic evidence that, when the police arrived, Rapp had a bump on her forehead.[1] Admittedly, the jurors could have disagreed with respect to whether this bump was inflicted with a tire iron or with a fist. Even if so, this would merely be a disagreement over exactly how the crime was committed. The single bump was evidence of a single discrete crime.

Rapp also testified, however, that over the next few days, she developed bumps all over the back of her head and bruises all over her face. Hence, under *Johnson*, the jury could have found at least two discrete crimes: (1) a beating that caused the forehead bump and (2) a beating that caused these other injuries. The jury would not have to be unanimous as to whether defendant caused the former with a tire iron and the latter with his fist, or vice versa. However, it would have to be unanimous as to which beating was the basis of its verdict.

On this record, however, we can be certain, beyond a reasonable doubt, that the jury unanimously found defendant guilty based on the beating that caused the forehead bump. The bump was shown not only by a photograph, but also by the testimony of a police officer and of Rapp herself. Even the defense witnesses agreed that Rapp had a bump on her forehead (though they suggested that it was self-inflicted). By contrast, Rapp's testimony that she developed other injuries later was uncorroborated. Certainly some or all of the jurors may have believed it; any such jurors, however, necessarily had to believe that she *also* had the bump on her forehead. Under these circumstances, the failure to give a unanimity instruction was harmless. (See *People v. Wolfe* (2003) 114 Cal.App.4th 177, 188 [7 Cal.Rptr.3d 483] [Fourth Dist., Div. Two] [failure to give unanimity instruction regarding unlawful possession of a firearm was harmless where defendant indicated that one of two stashes of firearms was his, so jury necessarily found him guilty based on that stash].)

---

[1] There was also evidence that there were some scratches on Rapp's face. However, there was no evidence as to how these were caused, and the prosecutor did not rely on them in closing argument. Accordingly, we disregard them.

## III

## DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2012, S203515.