Filed 2/27/15  P. v. Wiley CA4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | E059881 |
| Plaintiff and Respondent, | (Super.Ct.Nos. RIF1200932, RIF152866) |
| v. | |
| BELLAS WILEY, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Christian F. Thierbach, Judge.  Affirmed as modified.

Cannon & Harris and Donna L. Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Barry Carlton, and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Bellas Wiley was on probation when he hit his girlfriend in the face with a shoe during an argument. Defendant was found guilty of corporal injury to a spouse or cohabitant and assault with a deadly weapon. His probation was revoked and he was sentenced to a total prison sentence of three years.

Defendant makes the following claims on appeal:

1. The trial court had a sua sponte duty to instruct the jury with a unanimity instruction for his assault with a deadly weapon conviction.

2. The trial court erred by increasing both the victim restitution and the parole revocation fines under Penal Code sections 1202.4, subdivision (b) and 1202.45, subdivision (b)[1] when he was sentenced on the probation revocation.

3. The trial court exceeded its authority by ordering him to attend substance abuse and anger management classes while in prison.

4. The sentencing minute order which states that he not knowingly possess a firearm does not accurately reflect the oral sentence imposed.

We find merit in defendant's argument that the trial court could not order a substance abuse class (it could only recommend participation) and an anger management class; that the restitution fines could not be increased when he was sentenced on the probation revocation; and that the minute order from sentencing does not accurately reflect the imposed sentence. We will modify the sentence accordingly. Otherwise, we affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

# I

## PROCEDURAL BACKGROUND

On January 25, 2010, defendant pleaded guilty in Riverside County Superior Court case No. RIF152866 to being a felon in possession of a firearm (§ 12021, subd. (a)), to being a felon in possession of ammunition (§ 12316, subd. (b)), and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (c)). Defendant was placed on probation for 36 months.

On July 19, 2012, an information was filed in Riverside County case No. RIF1200932 charging defendant with corporal injury to a spouse or cohabitant (§ 273.5, subd. (a); count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). A jury found defendant guilty of both counts. As a result, his probation was revoked.

Defendant was sentenced on count 1 to three years, and the trial court stayed the sentence on count 2. On the probation revocation case, defendant was sentenced to two years plus 180 days of county jail time, which were ordered to run concurrent to count 1 and to all be served in state prison.

II

FACTUAL BACKGROUND

A.    *People's Case-in-Chief*

1.    *Stephen M.'s testimony*

On November 21, 2011, Stephen M. was living in a one-bedroom apartment in Moreno Valley with his mom, Jane Doe, and her boyfriend, defendant.  His mother and defendant had a three-year old son who was Stephen's half-brother.  Stephen arrived home around 4:00 a.m. on that day after being out with friends.  Defendant and Doe were in the bedroom when he arrived and he heard a commotion coming from the room.  They were both yelling.

Stephen went into the bedroom.  Doe was lying down flat on the bed.  Defendant was on top of her, straddling her.  He was holding her down by her wrists.  Doe was yelling "get off of me," and was struggling to get away.  Stephen did not observe any injuries to Doe's face.  Stephen yelled at defendant to stop.  Stephen walked out of the room and defendant followed him.  Stephen quickly ran outside and defendant did not follow him.

Stephen went back into the apartment.  Stephen saw Doe and defendant in the kitchen.  Defendant was holding a shoe in his hand.  Stephen saw defendant swing the shoe in Doe's direction but he did not see it strike Doe because defendant blocked his view.  Doe backed away and made a noise.  Stephen observed that Doe was bleeding from her lip and nose.  She had a lot of swelling on her eye and jaw.

4

Stephen went outside to call the police.  Defendant came outside and started chasing Stephen.  Stephen was able to get away from defendant.  Stephen went back to the apartment.  Stephen observed defendant get into a truck and start to move it.  The police then arrived at the apartment.

When Stephen came back in the apartment after the bedroom incident, there were what he believed to be drops of blood leading from the front door to the kitchen.  Stephen did not see these drops of blood when he first came home.  There was glass on the kitchen counter and floor.  Doe had some blood on her face when Stephen first came back in the apartment.  After 30 minutes, bruises showed up on Doe's face.  Stephen did not recall at trial that someone else was in the apartment when he arrived home but had previously testified someone else was home.

2.    *Jane Doe's testimony*

As of November 2011, defendant and Doe had been engaged for several years and were living together.  On the night of November 21, their younger son was staying with a neighbor across the street.  Doe and defendant had gone out drinking with friends at around 11:00 p.m. on November 20.  They had a gallon of vodka between four people.  Doe drank about five tall cups of vodka.  Doe felt that she was under the influence but did not recall having trouble walking or speaking.

Doe and defendant came home at approximately 4:00 a.m. Stephen was at home. Doe and defendant argued with Stephen because Stephen was drinking and smoking in the apartment. At one point, defendant chased Stephen out of the house. Doe ran after them but she fell against an entertainment center that was by the front door. She slipped on some juice that was on the floor. She was hurt on her face and leg, and had a cut on her foot from the glass. She cut her lip.

Defendant did not hit her or Stephen that night. The bruises on her face were from the fall. She bruised easily because she was anemic. Doe could not recall if she told the responding officer that her injuries were caused by the fall. Defendant did not throw a shoe at her. She did recall arguing with defendant because he was trying to take their younger son from her arms.

Doe later recalled that defendant had been holding her down on the bed against her will but it was because she was throwing things and going "ballistic." Doe spoke with an investigator with the district attorney's office sometime after the incident and never told him that she had been injured by falling. She told the investigator that she was injured when she was trying to break up a physical altercation between Stephen and defendant. Doe stated that she may have been injured this way. She could not recall specifically because she had been intoxicated. Doe had testified earlier that she and defendant had not argued that morning. During earlier testimony, she had never said her injuries were caused by a fall.

### 3. *Police response and investigation*

Riverside County Sheriff's Deputy Daniel Flores was called to the above apartment in response to a domestic violence call. As he approached the location, he observed defendant driving away from the area in his truck at a high rate of speed. Deputy Flores initiated a traffic stop. Deputy Flores then contacted Doe. Doe had numerous injuries. She had a large bump on her forehead, a laceration on her eyelid that was bleeding, she had abrasions on her arms and cheek area, and a cut on her foot. Doe was asked how she had been injured and she claimed to not even know that she had been hurt. Doe had no explanation for her injuries.

About 20 minutes later, Deputy Flores spoke with Doe again. Doe claimed that she and defendant had been in the bedroom arguing over their baby. They got into an altercation. She never told Deputy Flores that she had fallen.

Stephen told Deputy Flores that Doe and defendant had an altercation in the bedroom. Stephen told the deputy that he saw defendant swing a shoe at Doe. Deputy Flores never saw another person in the apartment. Doe had alcohol on her breath but did not seem to be intoxicated. Deputy Flores did not smell alcohol on Stephen. There was a shoe on the kitchen counter. Deputy Flores did not see drops of blood leading from the front door to the kitchen.

William Hanley was an investigator employed by the Riverside County District Attorney's Office. Hanley interviewed Doe on January 31, 2012. Doe told Hanley that Stephen and defendant had gotten into a fight that night. It escalated to the point that Doe had to intervene. She was injured when she got between the two of them. Doe never said

7

that she fell into the entertainment center. Doe denied that she had been intoxicated that night. Doe denied they had been fighting over their baby. Doe never mentioned that someone witnessed the incident.

B. *Defense*

Jerry Duane William, Jr. was at the apartment with defendant and Doe in the early morning hours of November 21. Defendant and Doe had picked him up about 3:00 a.m. because they were all going to a funeral together. They all went to the apartment in Moreno Valley. Stephen was at the apartment when they arrived.

Defendant and Doe got into an argument. They went into the bedroom. The arguing got louder so William and Stephen went to the bedroom. He observed defendant kneeling on top of Doe holding her down. Defendant was telling her to calm down.

Stephen yelled for Doe. Stephen tried to get a knife to use against defendant but William took him outside. William went back inside to get defendant out of the apartment. William had dropped a glass and spilled some juice on the floor. Stephen was able to get back into the apartment and yelled something when he was inside. Defendant ran after Stephen and they ran outside. Doe tried to run after them but tripped and fell into the entertainment center. William saw that Doe's lip was "busted" and she had been cut on her foot from the glass. Doe got up and kept chasing after defendant and Stephen. William saw the police arrive but he never talked to them about the incident. William observed defendant throw a shoe at the door at one point.

William had prior convictions for attempted robbery and criminal threats.

8

# III

# UNANIMITY

Defendant contends that the trial court erred by failing to sua sponte instruct the jury with a unanimity instruction[2] because count 2, the assault with a deadly weapon charge, could have been based on any one of three discrete acts committed by defendant.

A. *Additional Factual Background*

The jury was instructed that it could find defendant guilty of count 2, if the People proved, in relevant part, that the "defendant did an act either with a deadly weapon other than a firearm or with force that would directly and probably result in the application of force to another person, and that force was likely to produce great bodily injury." It was further advised, "The terms 'application of force' and 'apply force' mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. . . . The touching does not have to cause pain or injury of any kind."

During opening argument, the prosecutor argued that Stephen was a credible witness. Doe had changed her story and William was not credible. The prosecutor argued that the "deadly weapon" in count 2 was the shoe used to hit Doe. Further, the shoe caused great bodily injury. The prosecutor also argued that hitting Doe with the

---

[2] CALCRIM No. 3500 provides: "The defendant is charged with _____ *<insert description of alleged offense>* [in Count _____] [sometime during the period of _____ to _____]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

shoe supported the conviction in count 1, the corporal injury to a spouse or cohabitant charge.

Defendant argued that one swing of the shoe by defendant could not have caused all of Doe's injuries. William's testimony as to how she was hurt matched her injuries. Stephen's testimony was not credible. Doe slipped and fell which caused all of her injuries.

In response, the prosecutor argued that the violence started while Doe and defendant were in the bedroom. The prosecutor argued that defendant hit Doe in the bedroom which was evidenced by the drops of blood and defendant chased Stephen out of the apartment because he knew he had committed a crime. The prosecutor argued, "So again, I agree, it wasn't just one strike of a shoe that (Jane Doe) suffered at the hands of the defendant, it was ongoing abuse. That's how he explained the blood when he comes back in. [¶] Sure, [Stephen] missed some of the abuse, that's what happens. Many times the abuse happens behind closed doors."

Sometime during deliberations the jury sent out the following note: "1) Does the outcome of Count 2 affect the outcome of count 1?; 2) Does the shoe have to be the weapon to convict of count 2; 3) Can his hands be the weapon for count 2?" There is no discussion of the question on the record. The trial court answered as follows: "1) No – each count must be decided separately. See instruction #3515; 2) Count 2 involves either the use of a weapon (in this case the shoe) or force (of any kind) likely to cause great bodily injury; 3) Answered in response to question #2. Remember, Count 1 requires a relationship plus injury. Count 2 requires neither."

10

B.    *Analysis*

Defendant contends that three discrete acts could have been found to have supported the conviction in count 2:  (1) restraining Doe on the bed; (2) the droplets of blood on the floor showed another injury; and (3) defendant hitting Doe with the shoe in the kitchen.  As such, the trial court was required to give a unanimity instruction.  "'We review de novo a claim that the trial court failed to properly instruct the jury on the applicable principles of law.  [Citation]' [Citation.]" (*People v. Lueth* (2012) 206 Cal.App.4th 189, 195 [Fourth Dist., Div. Two] (*Lueth*).)

"In a criminal case, a jury verdict must be unanimous.  [Citations.] . . . . Additionally, the jury must agree unanimously the defendant is guilty of a *specific* crime. [Citation.]  Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.  [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  "On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty. [Citation.]" (*Ibid.*)

The continuous-course-of-conduct exception to a unanimity instruction applies when (1) the acts are so closely connected in time as to form part of one transaction, (2) the defendant tenders the same defense or defenses to each act, and (3) there is no reasonable basis for the jury to distinguish between them.  (*Lueth, supra,* 206

11

Cal.App.4th at p. 196.)  This exception had been applied "not to all crimes occurring during a single transaction but only to those where the acts testified to are so closely related in time and place that the jurors reasonably must either accept or reject the victim's testimony in toto.  [Citations.]" (*Ibid.*, internal quotation marks omitted for clarity.)  It may also apply to a continuous course of conduct taking place over an extended period with a single intent or objective, if the case is tried on that theory.  (See *People v. Daniel* (1983) 145 Cal.App.3d 168, 174-175.)

In *Lueth, supra,* 206 Cal.App.4th 189, this court questioned whether the single transaction branch of the continuous conduct exception is truly an exception to the unanimity requirement, or whether it would be "more accurate to say that, in this situation, a unanimity instruction is required, but the failure to give one is harmless." (*Id.* at p. 196.)  "The omission of a unanimity instruction is reversible error if, without it, some jurors may have believed the defendant guilty based on one act, while others may have believed him guilty based on another." (*People v. Arevalo–Iraheta* (2011) 193 Cal.App.4th 1574, 1589; *People v. Russo, supra,* 25 Cal.4th at p. 1133.)  The omission of a unanimity instruction is reviewed under the harmless-beyond-a-reasonable-doubt standard. (*People v. Wolfe* (2003) 114 Cal.App.4th 177, 187-188 [Fourth Dist., Div. Two] [standard of harmless error of *Chapman v. California* (1967) 386 U.S. 18 applies to erroneous omission of unanimity instruction].)

We need not decide if a unanimity instruction was required in this case, because this case is almost identical to *Lueth* in which this Division found the failure to give a unanimity instruction was harmless.  In *Lueth*, testimony was presented that the

12

defendant had been seen hitting the victim over the head with a tire iron and that he used the tire iron to damage a vehicle. When police arrived, the victim had a bump on her forehead but refused to state how she was injured. The victim testified at trial that defendant had hit her indoors with his fist. (*Lueth, supra,* 206 Cal.App.4th at pp. 191-193.) The defendant was convicted of aggravated assault, corporal injury to a cohabitant and vandalism. On appeal, the defendant argued that the trial court erred by failing to give a unanimity instruction for the corporal injury to a cohabitant charge. (*Id.* at p. 192.) This court concluded that any conceivable error in failing to give a unanimity instruction was harmless beyond a reasonable doubt as follows: "[W]e can be certain, . . . the jury unanimously found defendant guilty based on the beating that caused the forehead bump. The bump was shown not only by a photograph, but also by the testimony of a police officer and of [the victim] herself. Even the defense witnesses agreed that [the victim] had a bump on her forehead (though they suggested that it was self-inflicted). By contrast, [the victim's] testimony that she developed other injuries later was uncorroborated. Certainly some or all of the jurors may have believed it; any such jurors, however, necessarily had to believe that she *also* had the bump on her forehead. Under these circumstances, the failure to give a unanimity instruction was harmless." (*Id.,* at p. 199.)

Here, the trial court advised the jurors that assault with a deadly weapon could be committed by either hitting Doe with the shoe or with his fists. It is evident the jury unanimously agreed that the corporal injury was committed when defendant hit Doe with a shoe. This was the only theory argued by the prosecutor, the question from the jury

13

indicates this is how they resolved count 1, and this was the strongest evidence of injuries to Doe. As stated by the trial court, the evidence that defendant hit Doe with a shoe was also sufficient to support the assault with a deadly weapon charge. As such, even if some of the jurors believed that defendant committed assault with force likely to cause great bodily injury when he held Doe down on the bed, the jury necessarily reached a unanimous verdict on the assault with a deadly weapon charge based on defendant hitting Doe with a shoe. (*Lueth, supra,* 206 Cal.App.4th at p. 199.)

IV

INCREASE IN RESTITUTION FINES

Defendant contends that when his probation was revoked and he was sentenced to serve a state prison term concurrent with the current convictions in counts 1 and 2, the trial court improperly increased the restitution fine and parole revocation fines from $200 to $400. The People concede the error. The trial court was not authorized to impose greater restitution fines because the fines imposed when probation was originally granted were still in force.

When defendant was originally placed on probation in case No. RIF 152866, the trial court ordered a restitution fine of $200 pursuant to section 1202.4, subdivision (b), and ordered a stayed probation revocation fine in the same amount pursuant to section 1202.44. At the time of sentencing on the probation revocation, the trial court stated it had read the probation report. The probation department recommended a section 1202.4 fine in the amount of "$1,8200.00" and the same stayed parole revocation fine. The trial court ruled as to the fines, "And he is to pay in that case a restitution fine in the amount

14

of $400, pursuant to the Penal Code Section[s] 1202.4 and 2085.5.  Matching parole revocation restitution fine in the same amount.  The latter fine ordered suspended unless parole is violated and revoked."

The minute order from sentencing stated that the fine imposed pursuant to section 1202.4, subdivision (b) in case No. RIF152866 was $4,000.  A nunc pro tunc order was issued reflecting the $400 amount but the abstract of judgment was not corrected.

It is well established that upon the revocation of probation, the original restitution fine imposed remains in "force despite the revocation of probation."  (*People v. Chambers* (1998) 65 Cal.App.4th 819, 823; see also *People v. Downey* (2000) 82 Cal.App.4th 899, 921.)  The trial court "exceed[s] its statutory authority in imposing [a] second restitution fine."  (*Chambers,* at p. 823.)  Here, the $200 restitution and revocation fines imposed at the time of the original grant of probation remained in force.  As such, the abstract of judgment and minute order for case No. RIF152866 should be amended to strike the $4,000 and $400 fines and reflect that both fines imposed were in the amount of $200.

V

ANGER MANAGEMENT AND DRUG COUNSELING CLASSES

IN STATE PRISON

Defendant contends that the trial court erred by ordering that he attend substance abuse classes in prison because it could only *recommend* such counseling.  Moreover, the trial court had no statutory authority to order that defendant attend anger management classes.  Respondent concedes that the trial court could only recommend substance abuse

15

classes and we will order that defendant's sentence be so modified. We agree with defendant that the trial court was not authorized to impose anger management classes.

At sentencing, the trial court noted that defendant had a terrible anger management problem. He was violent with the woman he supposedly was in love with and who was the mother of his child. The trial court ordered "[T]hat the defendant not only participate in a counseling or education program having a substance abuse component through the Division of Adult Institutions, but also an anger management program, if one is in fact available in the prison system."

As for the substance abuse counseling, section 1203.096, subdivision (a), specifically provides that a trial court only "recommend in writing that the defendant participate in a counseling or education program having a substance abuse component while imprisoned." (§ 1203.096, subd. (a).) Case law also finds that a trial court can only recommend to the appropriate authorities that a defendant participate in substance abuse counseling. (*People v. Peel* (1993) 17 Cal.App.4th 594, 599-600.) It was appropriate here for the trial court only to recommend such counseling. As such, we shall order that the minute order and abstract of judgment for both cases be modified to clarify that such participation is recommended, not ordered, by the trial court.

As for ordering the anger management classes, we have found no statutory authority for such order. A court has discretion in sentencing, but this discretion must be based on punishment prescribed by statute. (*People v. Lara* (1984) 155 Cal.App.3d 570, 574.) Since we have been unable to locate, and respondent has not provided, any statute

authorizing the trial court to order defendant to attend anger management classes, we will order the provision be stricken.

## VI

## CLERICAL ERROR

Defendant claims that the minute order from sentencing must be corrected for both cases to strike that the trial court ordered that he not knowingly possess firearms. The minute orders from sentencing on the probation revocation and the current case state that the trial court ordered that defendant not knowingly possess or own a firearm. However, the oral pronouncement of sentence did not include such an order. In fact, the oral sentence makes no mention of possession of firearms. While it is true that under section 29800, defendant, as a convicted felon, is prohibited from ever possessing a firearm, the trial court did not make such an order at sentencing. When there is a discrepancy between a court's oral pronouncement of sentence and the court's minute order, the oral pronouncement will control. (See, e.g., *People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386.) A clerical error can be corrected at any time. (*Mitchell,* at p. 185.) We will order that the minute order be modified to accurately reflect the imposed sentence.

## VII

## DISPOSITION

The judgment in both case Nos. RIF152866 and RIF1200932 are modified to reflect that substance abuse counseling pursuant to section 1203.096 is recommended, not ordered. The superior court clerk is directed to prepare an amended minute order and

17

abstract of judgment in both cases to state that substance abuse counseling is recommended. In addition, the minute orders from sentencing on both cases are to omit any reference to the knowing possession of firearms, deadly weapons or related paraphernalia and that anger management classes were ordered. Further, the minute order from sentencing and abstract of judgment in case No. RIF152866 is modified to strike the $4,000 restitution fine pursuant to section 1202.4, subdivision (b), and will be modified to reflect the $200 fine imposed, and also the parole revocation fine pursuant to section 1202.45, subdivision (b) in amount of $400 will be stricken and shall be reflected as $200. The superior court clerk is ordered to forward the amended abstracts of judgment to the Department of Corrections and Rehabilitation. (§§ 1213, 1216.) In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

18