Filed 3/30/26  P. v. Lyons CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D087346 |
| Plaintiff and Respondent, | (Super. Ct. No. RIF2206272) |
| v. | |
| JOSHUA L. LYONS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Jerry C. Yang, Judge.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Attorney General, Arlene Sevidal, Assistant Attorney General, Stephanie H. Chow and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Joshua Lyons of resisting an executive officer in the performance of duty (Pen. Code,[1] § 69) and assault on a peace officer (§ 241, subd. (3)). The trial court considered and denied Lyons's motion for a new trial. Lyons appeals, challenging the factual sufficiency of his convictions. He further contends the trial court failed to sua sponte instruct the jury on unanimity. Finally, he contends the trial court erred by not granting a motion for a new trial. We reject these arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2022, California Highway Patrol Officer Niko Le Beau was driving his patrol vehicle when he noticed a truck whose driver was "flipping" him off. The truck did not have license plates. Le Beau knew that car thieves commonly avoid detection by not having license plates. He activated his emergency lights, prompting the driver to pull into a parking lot. Le Beau parked his patrol vehicle, exited, and saw defendant Joshua Lyons exiting the truck. Le Beau considered Lyons's action of exiting his truck during a traffic stop a "red flag" that "raised concerns" regarding Lyons's intentions. While moving towards Lyons, Le Beau commanded Lyons to return to his vehicle. Lyons took three steps towards Le Beau while Le Beau walked towards Lyons to "close[ ] [the] distance." Le Beau tried twice to grab Lyons's hands to gain control over the situation because "hands are what kill." Lyons swatted away Le Beau's hands. After Le Beau's second attempt, Lyons hit Le Beau on the side of his head. Then, Le Beau tried to grab Lyons's legs to gain control over him, but Lyons put Le Beau in a chokehold. Le Beau took Lyons to the ground, but Lyons put his arm against

---

[1] All further undesignated statutory references are to the Penal Code.

Le Beau's esophagus, making it difficult for Le Beau to breathe.  Le Beau felt in fear for his life, and he struck Lyons's torso to try to get him to release his arms.

A bystander jumped on Lyons's legs to help Le Beau gain control of and handcuff Lyons.  The bystander testified Lyons charged Le Beau unprovoked and "started swinging and pummeling" him.  He further testified that Lyons was overpowering Le Beau and "it was very evident that [Le Beau] needed help."

Lyons was charged with resisting an executive officer in performance of duty (§ 69) and assault on a peace officer (§ 241, subd. (c)).  A jury found him guilty on both charges.  Lyons moved for a new trial under section 1181, subdivision (6), which the court denied.  The court denied probation and sentenced Lyons to the low end sentence of 16 months.

## DISCUSSION

A. Requirement that an officer must be acting lawfully under sections 69 and 241, subdivision (c)

Lyons contends there is insufficient evidence to support the two charges under sections 69 and 241, subdivision (c), because Le Beau's use of force was excessive and not objectively reasonable under the circumstances. In particular, he argues that Le Beau used excessive force by grabbing Lyons's hands without giving him an adequate opportunity to comply with Le Beau's commands and, therefore, was not acting in lawful performance of his duties, as required under both statutes.

1. *Applicable law*

A defendant is guilty of violating section 69 when he or she resists the officer by the use of force or violence as long as that officer was acting lawfully at the time of the offense.  (*People v. Smith* (2013) 57 Cal.4th 232,

3

241.) It is, therefore, an essential element of that offense that the officer at the time of the arrest must be engaged in the lawful performance of his or her duties, and use of excessive force by an officer to accomplish an arrest is unlawful. (*People v. White* (1980) 101 Cal.App.3d 161, 167 (*White*); see CALCRIM No. 2652.) When a peace officer uses unreasonable or excessive force in making the arrest or the detention, the person being arrested does not violate the law if he or she uses reasonable force to defend himself or herself against the use of excessive force. (*People v. Sons* (2008) 164 Cal.App.4th 90, 102–103.)

Similarly, to be convicted under section 241, subdivision (c), the assault of the peace officer "must occur while the officer is engaged in the performance of his duties." (*Franklin v. County of Riverside* (1997) 971 F.Supp. 1332, 1335.) A peace officer is not engaged in the performance of his duties, within the meaning of section 241, subdivision (c), if he uses excessive force in making the arrest. (*Franklin,* at p. 1336.) "[W]here excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties." (*White, supra*, 101 Cal.App.3d at p. 164; see also *People v. Sibrian* (2016) 3 Cal.App.5th 127, 133.)

Whether an officer used excessive force is an objective inquiry. An officer's actions must be " 'objectively reasonable in light of the facts and circumstances confronting [him], without regard to [the officer's] underlying intent or motivation.' " (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 527 (*Ransweiler*).) Courts must assess an officer's reasonableness by considering all relevant facts leading up to the critical moment. (*Barnes v. Felix* (2025) 605 U.S. 73, 78–83 (*Barnes*).) Further, the reasonableness of an

officer's use of force " ' "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. [Citations.]" ' " (*Ransweiler*, at p. 527.)

We review whether an officer's conduct complied with the Fourth Amendment de novo, and we consider the trial court's factual findings for substantial evidence. (See *In re Edgerrin J.* (2020) 57 Cal.App.5th 752, 759.) Substantial evidence is " 'evidence that is reasonable, credible, and of solid value . . . .' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We consider this evidence "in the light most favorable to the prosecution and presum[e] every fact the jury could reasonably deduce from that evidence." (*People v. Pearson* (2012) 53 Cal.4th 306, 319.) We " ' "must accept logical inferences that the jury might have drawn from the evidence even if [we] would have concluded otherwise." ' " (*People v. Solomon* (2010) 49 Cal.4th 792, 811–812.)

2. *Substantial evidence supports the implicit finding that Officer Le Beau's use of force was reasonable*

We conclude sufficient evidence supports the finding that Le Beau used reasonable force and, thus, was acting lawfully while performing his duties. The parties do not dispute that an officer may take certain measures to ensure the safety of a traffic stop, including ordering a driver to remain in his car. Here, Lyons displayed erratic and aggressive behavior prior to Le Beau reaching for his hands. First, Lyons "flipped off" Le Beau without provocation. Second, after Le Beau initiated the traffic stop, Lyons opened his car door and exited, which Le Beau deemed "not normal behavior" and "a big, red flag." Third, Lyons disobeyed Le Beau's repeated commands to remain in his car and instead took steps towards Le Beau. In fact, a witness testified Lyons "charged [Le Beau] . . . out of nowhere." When the gap had closed between them, Le Beau attempted to grab Lyons's hand to "gain

5

control." Le Beau grabbing Lyons's hands—which caused no injury—was reasonable and proportional considering the totality of the circumstances. (See *Barnes, supra*, 605 U.S. at p. 80 [under the totality approach, "actions the officer took during the stop, such as giving warnings or otherwise trying to control the encounter" can "carry weight in the analysis"].) In reaction to Lyons's unprovoked hostility, unusual conduct, and failure to follow commands, Le Beau reached for Lyons's hands to gain control. Lyons has not shown that this force used was excessive.

We are unpersuaded by Lyons's argument that officers must provide individuals an opportunity to comply with commands before resorting to force. While an opportunity for compliance is a factor in assessing the reasonableness of an officer's use of force, it must be considered in the totality of the circumstances context. (*Ransweiler, supra*, 171 Cal.App.4th at p. 812 [recognizing that peace officers "are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required"]; *Barnes, supra*, 605 U.S. at pp. 83–84 ["[A] court cannot thus 'narrow' the totality-of-the-circumstances inquiry, to focus on only a single moment."].) Under these circumstances, we conclude that substantial evidence exists from which a rational jury could find that Le Beau's use of force was reasonable.

B. Unanimity instruction

Lyons claims the trial court erred by failing to give a sua sponte unanimity instruction on both counts, and he contends the court should have instructed the jury to unanimously agree on which act constituted force. He argues the instruction was required because, during closing argument, the prosecutor identified multiple acts that could have substantiated the use of force aspect for each offense including: (1) swatting away Le Beau's hands;

6

(2) hitting Le Beau on the head; and (3) choking Le Beau.  He claims the jury's question during deliberations suggests that the jurors may have been considering different acts or theories of guilt without a clear understanding of what specific act needed to be unanimously agreed upon.

1. *Applicable law*

Under the state and federal constitutions, a unanimous jury verdict is required to convict a person of a crime.  (*Ramos v. Louisiana* (2020) 590 U.S. 83; *People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  This requirement is typically satisfied when the jury unanimously finds the defendant committed the alleged crime.  But that is not always the case.  As the California Supreme Court has explained, "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act."  (*Russo*, at p. 1132.)  This requirement " 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' "  (*Ibid.*)

There are "several exceptions to the unanimity rule.  For example, no unanimity instruction is required if the case falls within the continuous-course-of-conduct exception, which arises 'when the acts are so closely connected in time as to form part of one transaction' [citation], or 'when . . . the statute contemplates a continuous course of conduct of a series of acts over a period of time.' "  (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*).)  Additionally, "[t]here also is no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime."  (*Ibid.*)

7

We review de novo a claim that the trial court failed to properly instruct the jury on applicable principles of law. (*People v. Lueth* (2012) 206 Cal.App.4th 189, 195.)

2. *"Continuous course of conduct" exception applies*

Here, Lyons swatted, hit, and choked Le Beau during a single encounter that lasted less than a minute. Crucially, these acts happened during the same moments, in the same location, and in response to the same event—Le Beau reaching for Lyons's hands. There was no space or time dividing the acts. In addition to the close connection in time, the acts were part of the same "transaction"—in this case, the same assaultive conduct—with no reasonable basis for a juror to distinguish between them. (See, e.g., *People v. Diedrich* (1982) 31 Cal.3d 263, 282). Indeed, in a postverdict discussion, the jurors stated they considered this entire course of conduct from the traffic stop through the arrest, "rather than focusing on specific acts of force." The jury did not need to agree on a specific act where all acts were part of a continuous course of conduct. (Compare *People v. Mehaldo* (1998) 60 Cal.App.4th 1529 [unanimity instruction required where defendant's multiple criminal threats were separated by several hours] with *People v. Lopez* (2005) 129 Cal.App.4th 1508 [unanimity instruction not required where defendant struggled with several officers while resisting an arrest].) Additionally, Lyons's defenses to all his acts were the same: the witnesses lacked credibility, and Le Beau was not lawfully performing his duties. Because Lyons's acts constituted a continuous crime, and he offered the same defense to the various acts, an exception to the unanimity instruction requirement applies and Lyons's claim of error fails. (See *Jennings, supra*, 50 Cal.4th at p. 679 [unanimity not required if the defendant offers the same defense to the various acts constituting the crime].)

8

C.  Motion for a new trial

The court denied Lyons's motion for a new trial under section 1181, subdivision (6).  Lyons contends the trial court abused its discretion in doing so, alleging the jury (1) misapplied the law because it did not seek further clarification on a question submitted to the court, (2) erroneously considered Lyons's failure to heed Le Beau's commands as an element of the crimes, and (3) engaged in misconduct by misapplying the law.  Lyons argues that these purported errors, taken together, denied him due process.

1.  *Additional facts*

At 3:13 p.m. on the first day of deliberations, the jury submitted the question "Does failure to comply go to resisting the officer?" to which the court responded after 3:43 p.m., "Can you please re-state the question in a different way, with different words?"  The parties had stipulated to release the jury at 4:00 p.m.  The jury returned the next morning and, without rephrasing their question, resumed deliberations at 9:15 a.m.  They returned with a verdict at approximately 9:30 a.m.

After the verdict, defense counsel moved for a new trial under section 1181, subdivision (6), arguing the verdict was contrary to law or evidence.  In the motion, defense counsel included information about a postverdict discussion with nine of the 12 jurors.  The jurors explained that, rather than rewrite the question, they "collectively decided not to follow the court's suggestion and just use common sense."  Defense counsel argued that the jury opted not to "follow the law" when they chose to use "common sense," alleging the jury inferred that Lyons's noncompliance with Le Beau's commands was "sufficient" to complete the offense of "resisting a peace officer."  At a hearing on the motion, however, defense counsel conceded no juror "actually said the words" that the case was decided solely on Lyons's

9

noncompliance with Le Beau's commands.  The court rejected Lyons's argument that the jury convicted on both counts "merely because Lyons did not comply with the officers' directive to return to his car."  The court concluded the verdicts were supported by the evidence and denied the motion for a new trial.

2.  *Applicable law*

A court may grant a new trial under section 1181, subdivision (6), if the jury's verdict is contrary to the law or the evidence.  (§ 1181, subd. (6).)  A trial court reviewing a motion for new trial does not give deference to the jury's evidentiary findings.  (*Porter v. Superior Court* (2009) 47 Cal.4th 125, 133.)  It independently examines all the evidence and may conclude the jury's verdict is contrary to the evidence.  (*Ibid.*)  "In doing so, the judge acts as a 13th juror who is a 'holdout' for acquittal.  Thus, the grant of a section 1181[, subdivision] (6) motion is the equivalent of a mistrial caused by a hung jury.  [Citation.]"  (*Ibid.*)  "A trial court has broad discretion on ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion."  (*People v. Davis* (1995) 10 Cal.4th 463, 524.)

" ' "We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard."  [Citations.]  " 'A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion.' " ' "  (*People v. Lightsey* (2012) 54 Cal.4th 668, 729.)

3.  *The court properly denied Lyons's motion for a new trial*

Lyons argues the jury (1) misapplied the law because it did not seek further clarification on a question submitted to the court, (2) erroneously considered Lyons's noncompliance with Le Beau's commands as an element of

the crimes, and (3) engaged in misconduct as a result of misapplying the law. Lyons's claim that the jury must have misapplied the law because it did not resubmit its question is not supported by the record. The jurors had complete instructions on the law and continued to deliberate even with the pending question. Although the jurors stated they "used common sense" to resolve their question, they further attested they considered the entire course of conduct—from the initiation of the traffic stop to when Lyons was placed in handcuffs—in reaching their verdict. Thus, the jury's decision not to resubmit their question does not lead to the conclusion that they misapplied the law.

Next, the record does not support Lyons's contention that the jury improperly considered Lyons's noncompliance as an element of either offense. While noncompliance is not an element of either section 69 or section 241, it was a relevant factor to consider in determining whether Le Beau used reasonable force when grabbing Lyons's hands. In that way, the jury's consideration of Lyons's noncompliance was relevant when evaluating the reasonableness of Le Beau's use of force under the totality of the circumstances. (See *Barnes, supra*, 606 U.S. at p. 73.) The jurors also stated they considered the entire course of conduct in reaching their verdict. The record clearly shows the jury did not convict Lyons solely on his failure to comply with Le Beau's commands.

Finally, Lyons argues that the court erred in denying the motion for a new trial under section 1181, subdivision (3), for jury misconduct. He contends that the jury committed misconduct because it misapplied the law by considering Lyons's failure to heed Le Beau's commands as an element of the crime. At the outset, the basis for Lyons's motion was predicated on his claim that the verdict "is contrary to law or evidence," and not on a claim of

11

jury misconduct.  He did not raise this jury misconduct argument in the trial court.  Thus, he has forfeited this challenge.  (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["[A]n appellate court will not consider claims of error that could have been—but were not—raised in the trial court."].)

Even if the claim was not forfeited, we would conclude that the court did not abuse its discretion in denying the motion because the record does not support Lyons's contention that the jury improperly considered Lyons's noncompliance as an element of each offense.  (See *Barnes, supra*, 606 U.S. at p. 73.)  Also, consideration of Lyons's noncompliance was not legally irrelevant, as Lyons claims, because it is a factor to consider when evaluating the reasonableness of Le Beau's use of force.  (*Ibid.*)  We conclude the court did not abuse its discretion in denying Lyons's motion for a new trial.

DISPOSITION

The judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


CASTILLO, J.


RUBIN, J.