Filed 9/1/20  P. v. Williams CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E072614 |
| v. | (Super.Ct.No. FWV19000021) |
| DANTE WILLIAMS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed in part, reversed in part, remanded with directions in part.

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Defendant and appellant Dante Williams repeatedly attempted to threaten the victim. Following a jury trial, defendant was convicted of one count of attempted criminal threats (Pen. Code,[1] §§ 664/422, subd. (a); count 1); one count of assault with a deadly weapon, to wit, a knife (§ 245, subd. (a)(1); count 2); and two counts of misdemeanor battery upon a peace officer or other designated official (§ 243, subd. (b); counts 3 & 4). The jury also found true that defendant personally used a knife (§ 12022, subd. (b)(1)) in the commission of count 1. In a bifurcated proceeding, the trial court found true that defendant had suffered four prior prison terms (§ 667.5, subd. (b)).

Defendant was sentenced to a total term of seven years in state prison with 220 days of credit for time served as follows: the middle term of three years on count 2, plus one year for each of the four prior prison terms; the sentence on count 1 and its attendant knife use enhancement was stayed pursuant to section 654; and the court ordered terminal disposition on counts 3 and 4. On appeal, defendant contends (1) the trial court erred by failing to provide the jury with a unanimity instruction as to the attempted criminal threats allegation; and (2) the one-year enhancements imposed for the four prior prison terms must be stricken pursuant to newly enacted Senate Bill No. 136 (Senate Bill 136). The People agree but argue the matter should be remanded for resentencing. We reverse the true findings on defendant's four one-year prior prison term

---

[1]  All future statutory references are to the Penal Code unless otherwise stated.

enhancements under Senate Bill 136. We also agree with the People and find that the matter should be remanded to the trial court for resentencing. We affirm the judgment in all other respects.

## II

## FACTUAL BACKGROUND

On December 29, 2018, E.C. was eating in his parked car with the windows rolled down when he saw defendant wandering in an adjacent park pushing a shopping cart. E.C. then observed defendant coming towards him. As defendant neared E.C., defendant put on a ski mask, pulled out a knife and came up to the car. E.C. became scared. Defendant pointed the knife at E.C. and said he was going to kill E.C. Although E.C. was scared, he told defendant to go away. Defendant made two stabbing motions towards E.C. within inches of the car door.

E.C. was afraid defendant might kill him, so he jumped over to the passenger side of the car. E.C. then exited the vehicle from the passenger side and went toward defendant. When defendant saw E.C., defendant dropped the knife, picked the knife back up, and started running. E.C. chased after defendant but eventually returned to his vehicle, climbed back in, and sat there stunned. He could not drive away because he was scared and shaken by what had occurred.

Around three to five minutes later, defendant returned holding a phone in one hand and hiding his other hand in his shorts. E.C. did not see the knife but believed defendant had a gun and was going to kill him. Defendant asked E.C., "'You a cop?'" and also

asserted "'I'm going to kill you because you're a cop.'" Although E.C. was still scared and believed defendant was armed, E.C. exited his vehicle and began to again chase defendant. E.C. also called 911 because he was "afraid something was going to happen" to him. E.C. stopped chasing defendant when the 911 operator told him to "let it go." Police officers arrived minutes later and arrested defendant. Officers found the knife in defendant's shopping cart.

While in custody at the police station, defendant yelled, was uncooperative, and pretended to pass out. Police called paramedics to check on defendant. The Ontario Fire Department responded and transported defendant to a hospital. As firefighters were checking defendant into the hospital, defendant became belligerent and aggressive. He struck one of the firefighters and wrestled with the firefighter and other officers in an effort to get free. Defendant also spat at the officers and in the firefighter's face. An officer attempted to restrain defendant and defendant threatened to kill him. Defendant continued to resist until hospital staff used a sedative on him to calm him down.

III

DISCUSSION

A. *Failure to Instruct with Unanimity Instruction*

Defendant argues his constitutional right to a unanimous jury verdict as to the attempted criminal threats allegation (count 1) was violated when the trial court failed to

4

provide the jury with a unanimity instruction. (CALCRIM No. 3500.)[2] Specifically, he contends the evidence showed two instances of attempted criminal threats—the first time he approached E.C. with a knife and threatened E.C., and the second time when he returned and threatened E.C. Defendant insists that this evidence constituted two separate instances of attempted criminal threats and that a unanimity instruction was required.

In a criminal case, the jury must unanimously agree the defendant is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*); *People v. Diedrich* (1982) 31 Cal.3d 263, 281 (*Diedrich*).) A unanimous verdict, in criminal cases, aims to "'eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.'" (*Russo*, at p. 1132, quoting *People v. Sutherland* (1993) 17 Cal.App.4th 602, 612.) Thus, a trial court has a sua sponte duty to give the jury a unanimity instruction where a single crime could be based upon one of several possible acts. (*Diedrich*, at pp. 280-282; see *People v. Madden* (1981) 116 Cal.App.3d 212, 215-217 [explaining the decisional history regarding the need for a unanimity instruction].) "'We review de novo a claim that the trial court failed to properly instruct the jury on the applicable principles of law. [Citation.]' [Citation.]" (*People v. Lueth* (2012) 206 Cal.App.4th 189, 195 (*Lueth*).)

---

[2] CALCRIM No. 3500 provides: "The defendant is charged with ___ < insert description of alleged offense > [in Count ___] [sometime during the period of ___ to ____]. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act (he/she) committed."

When there are multiple acts presented to the jury that could constitute the charged offense, and the prosecution has not elected one act, "a defendant is entitled to an instruction on unanimity." (*People v. Dellinger* (1984) 163 Cal.App.3d 284, 301; see *People v. Beardslee* (1991) 53 Cal.3d 68, 92 (*Beardslee*).) The prosecution's election may be accomplished by means of opening and closing argument. (See *People v. Mayer* (2003) 108 Cal.App.4th 403, 418 [prosecutor's opening and closing arguments constituted "an election for jury unanimity purposes"]; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455 ["Because the prosecutor's opening argument elected what conduct by defendant amounted to the crime charged, we conclude that no unanimity instruction was required."].) "[T]he failure to give a jury unanimity instruction (now CALCRIM No. 3500) is the most common kind of instructional error in criminal cases." (*People v. Norman* (2007) 157 Cal.App.4th 460, 467 [the court went on to advise trial judges to make CALCRIM No. 3500 a standard instruction unless there is a reason not to give it].)

Case law, however, has established an exception to this general requirement in two factual situations. (*People v. Jenkins* (1994) 29 Cal.App.4th 287, 299.) These situations are referred to collectively as the "continuous conduct" rule. (*Ibid.*; *Diedrich*, *supra*, 31 Cal.3d at pp. 281-282.) The first is when "'the statute contemplates a continuous course of conduct of a series of acts over a period of time. [Citation.]' [Citation.]" (*People v. Jenkins*, at p. 299; *Diedrich*, at p. 282 [citing examples of pandering, child abuse, bribery, and contributing to delinquency].) The second is "when (1) 'the acts are so closely

6

connected in time as to form part of one transaction,' (2) 'the defendant tenders the same defense or defenses to each act,' and (3) 'there is no reasonable basis for the jury to distinguish between them. [Citations.]' [Citation.]" (*Lueth*, *supra*, 206 Cal.App.4th at p. 196; see *People v. Williams* (2013) 56 Cal.4th 630, 682 [unanimity instruction may not be required where the "'criminal acts . . . took place within a very small window of time,'" and "'the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them.'"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1199; *Beardslee*, *supra*, 53 Cal.3d at p. 93 ["'[W]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction is not necessary to the jury's understanding of the case.' [Citations.]"]; *People v. Stankewitz* (1990) 51 Cal.3d 72, 100; *People v. Bui* (2011) 192 Cal.App.4th 1002, 1010-1011; *People v. Dieguez* (2001) 89 Cal.App.4th 266, 275.)

Here, even if we assume, for the sake of argument, the trial court erred in failing to instruct the jury with a unanimity instruction, any error is harmless beyond a reasonable doubt because the evidence shows that the jury could not reasonably disagree in its finding defendant committed an attempted criminal threat.**3** (*People v. Thompson* (1995)

---

**3** We note "[t]here is a split of opinion in the appellate courts as to whether the *Chapman* [*v. California* (1967) 386 U.S. 18, 24 (*Chapman*)] standard or [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836] standard for harmless error applies in a unanimity instruction case. (See, e.g., *People v. Matute* (2002) 103 Cal.App.4th 1437, 1448 [noting conflicting authorities].) The majority of the courts that have addressed the issue have applied *Chapman*. (See, e.g., [*People v.*] *Wolfe* [(2003)] 114 Cal.App.4th [177,] 186-188; *People v. Smith* (2005) 132 Cal.App.4th 1537, 1545; *People v. Deletto* (1983) 147

*[footnote continued on next page]*

36 Cal.App.4th 843, 853 ["Failure to give a unanimity instruction is governed by the harmless error standard of *Chapman* . . . , which requires the error to be harmless beyond a reasonable doubt.  [Citation.]"]; see *People v. Haley* (2004) 34 Cal.4th 283, 314.) "Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that [the] defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless." (*People v. Thompson*, at p. 853.)  The failure to give a unanimity instruction is also harmless "if the record indicate[s] the jury resolved the basic credibility dispute against the defendant and would have convicted the defendant of any of the various offenses shown by the evidence to have been committed." (*People v. Jones* (1990) 51 Cal.3d 294, 307, italics omitted.)

Viewing the record with these standards in mind, we are satisfied defendant was not prejudiced even if the trial court erred by failing to instruct the jury with a unanimity instruction under CALCRIM No. 3500.  The trial court here instructed the jury with CALCRIM No. 3515 that it must decide each count separately.  The court also instructed the jury with CALCRIM Nos. 3518 and 3550, which explained that all 12 jurors must agree to the decision.  In fact, CALCRIM No. 3550 instructed the jurors that "Your verdict on each count must be unanimous."

In addition, the record shows the prosecutor "elected" as to which "act" she was relying upon to support the attempted criminal threats offense during closing argument.

Cal.App.3d 458, 472; but see *People v. Vargas* (2001) 91 Cal.App.4th 506, 562 [*Watson* standard applies].)" (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576.)

The prosecutor explicitly and repeatedly referred to defendant's first instance when he approached E.C. with a knife in hand and threatened E.C. Indeed, in explaining to the jury the various elements of the offense, the prosecutor consistently referred to defendant's use of the knife during the crime, including defendant lunging or making stabbing movements at E.C. The prosecutor also clearly explained how defendant's conduct with the knife during the attempted criminal threat offense qualified for the attendant weapons enhancement. Moreover, at no point during argument did the prosecutor refer to defendant's second contact with E.C.

Specifically, the prosecutor stated: "'I'm going to kill you,' is what he tells [E.C.] when he comes up to his window with a knife in his hand, and he's within arm's distance." The prosecutor also asserted: "Circumstantial evidence gives us that glimpse into what [defendant] was thinking during this incident. He was holding the knife in front of [E.C.], right up next to his window, within arm's length is how it was described by [E.C.], that the defendant not only orally indicated that threat, but he made a lunging motion three times at least in the direction of [E.C.], when at arm's length. Once, he was even so close as to hit the car door with the knife." The prosecutor also argued: "Not only do we have the statement that is made to show us what the defendant's intent was, but we also have his actions with the knife at the same time." The record reveals the prosecutor relied on the first incident of defendant's threatening acts.

Furthermore, the record indicates defendant's threats were connected and formed part of a single continuing transaction. The defense to them was the same, and there was

9

no evidence upon which reasonable jurors could have disagreed regarding which act defendant committed. Defendant's threats to E.C. were identical. When defendant first approached E.C., he threatened to kill E.C. but E.C. chased him away. Around three to five minutes later, defendant returned and again threatened to kill E.C., and E.C. again chased him away. Defendant's acts were minutes apart and occurred in the same location. Although the first time he approached E.C. defendant had pulled out a knife, in the second instance E.C. believed defendant was armed with a gun. Nonetheless, defendant offered a single defense to the attempted criminal threats offense: that he did not threaten E.C. In other words, defendant did not offer legally distinct defenses to each threat, but instead asserted that he did not threaten E.C. In his defense for both instances, defendant argued he did not commit the attempted criminal threats offense and tried to discredit E.C.'s testimony. It appears the jury resolved the credibility dispute against defendant and convicted him of the attempted criminal threats offense.

In sum, the jury could not have rationally distinguished between the two incidents, such that defendant was denied his right to a unanimous verdict. Accordingly, we conclude that any error by the trial court for failing to instruct the jury with a unanimity instruction pursuant to CALCRIM No. 3500 was harmless beyond a reasonable doubt.

B.    *Senate Bill 136*

In supplemental briefing, defendant asserts that, following the enactment of Senate Bill 136, the four prior prison term enhancements must be stricken because his prior prison term convictions no longer qualify as predicate offenses for the imposition of

10

enhancements pursuant to section 667.5, subdivision (b). Defendant also argues that the ameliorative benefits of Senate Bill 136 apply retroactively. The People agree but believe a remand is necessary.

While this appeal was pending, the Governor signed Senate Bill 136 (2019-2020 Reg. Sess.) (Stats 2019, ch. 590, § 1), effective January 1, 2020. At the time of defendant's sentencing, former section 667.5, subdivision (b), required trial courts to impose a one-year sentence enhancement for each true finding on an allegation that the defendant had served a separate prior prison term unless the defendant had remained free of both felony convictions and prison or jail custody during a period of five years since the subject prior prison term. Following the enactment of Senate Bill 136, only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b), are subject to the one-year enhancement pursuant to Penal Code section 667.5, subdivision (b). (Stats 2019, ch. 590, § 1.)

"By eliminating section 667.5, subdivision (b) enhancements for all prior prison terms except those for sexually violent offenses, the Legislature clearly expressed its intent in Senate Bill No. 136 . . . to reduce or mitigate the punishment for prior prison terms for offenses other than sexually violent offenses. [Citation.]" (*People v. Jennings* (2019) 42 Cal.App.5th 664, 682 (*Jennings*).) Therefore, under the rule in *In re Estrada* (1965) 63 Cal.2d 740, "Senate Bill No. 136's . . . amendment to section 667.5, subdivision (b) applies retroactively to all cases not yet final as of its January 1, 2020, effective date." (*Jennings*, at p. 682.)

11

Defendant's case was still pending as of January 1, 2020.  Therefore, he is entitled to the ameliorative benefit of Senate Bill 136's amendment to section 667.5, subdivision (b).  Defendant's four prior prison terms were not for "a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code."  (Stats 2019, ch. 590, § 1.)  Because these four prior prison terms will no longer be qualifying prior prison terms for the imposition of enhancements pursuant to Penal Code section 667.5, subdivision (b), as amended by Senate Bill 136, we shall reverse the true findings on the four prior prison term enhancements.  (See *Jennings*, *supra*, 42 Cal.App.5th at p. 682 [court reversed the one-year section 667.5, subdivision (b) prior prison term enhancement].)

Defendant urges us to strike the enhancements, whereas the People ask that we remand the matter for the trial court to resentence defendant.  We agree with the People.  Because the trial court did not impose the maximum possible sentence, the trial court could exercise its discretion to "reassess the sentence based on the elimination of the additional punishment for the prison priors" on remand.  (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342 ["Because the trial court imposed the maximum possible sentence, there is no need for the court to again exercise its sentencing discretion" due to Senate Bill 136]; see *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15 ["Because the resentencing court had imposed the maximum possible sentence, regardless of whether the two-year on-bail enhancement was stricken, there is no need to remand the matter to the trial court to exercise its sentencing discretion anew"].)

We therefore conclude remand is appropriate for the trial court to resentence defendant in light of Senate Bill 136.  (See *Jennings*, *supra*, 42 Cal.App.5th at pp. 667-668 [remanding for resentencing in part because defendant was entitled to have enhancements stricken under Senate Bill 136].)

IV

DISPOSITION

The true findings on the four prior prison term enhancements under section 667.5, subdivision (b), are reversed.  The matter is remanded for the trial court to strike the four one-year prior prison term enhancements imposed under section 667.5, subdivision (b), and resentence defendant.  After resentencing defendant, the clerk of the superior court is directed to prepare an amended abstract of judgment reflecting defendant's new sentence, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


SLOUGH
J.


MENETREZ
J.