Filed 7/12/24  P. v. Andrews CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080840 |
| v. | (Super.Ct.No. RIF2102616) |
| SOLOMON ANDREWS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Rene Navarro, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Elizabeth M. Renner, Deputy Attorneys General, for Plaintiff and Respondent.

1

While being pursued by Jerry Garrison, a security guard from a Days Inn Hotel in Riverside, defendant and appellant Solomon Andrews threw glass beer bottles and bricks at Garrison and swung a concealed knife at Garrison and another man (referred to in the record as John Doe). A jury convicted Andrews of assault with a deadly weapon on Garrison (Pen. Code, § 245, subd. (a)(1); all undesignated statutory references are to the Penal Code) and of carrying a concealed dirk or dagger (§ 21310), and it found true that Andrews had suffered two prior convictions, which the trial court found were "strike" priors. The trial court sentenced him to state prison for 25 years to life for the assault and a consecutive term of four years for the concealed weapon possession.

On appeal, Andrews contends: (1) his conviction for assault with a deadly weapon must be reversed because the record does not contain substantial evidence that he used the bottles and/or bricks in such a manner that it was likely to produce death or great bodily injury; (2) the trial court erred by not instructing the jury that it had to unanimously agree whether throwing the bottles or the bricks constituted an assault with a deadly weapon; and (3) he was prejudiced when the trial court admitted his statement during the pursuit that he was a member of the Hoover criminal street gang.

We conclude the record contains substantial evidence that the manner in which Andrews threw the bottles and bricks at Garrison was likely to produce great bodily injury, and the trial court was not required to instruct on unanimity because the record does not reflect two discrete assaults—one with the bottles and one with the bricks—but instead reflects one continuous assault during which Andrews used two different types of

weapons that were at his disposal. Finally, we need not decide whether the trial court erred by concluding Andrews's statement of gang membership was sufficiently relevant to proving the charges against him. Andrews suffered no prejudice so the error, if any, was harmless. We affirm.

## I.

## PROCEDURAL BACKGROUND

In a first amended information, the People charged Andrews with one count of assault with a deadly weapon for his use of bottles and bricks against Garrison (§ 245, subd. (a)(1), count 1), two counts of assault with a deadly weapon for his use of a knife (§ 245, subd. (a)(1), counts 2 & 3), and one count of possessing a concealed dirk or dagger (§ 21310, count 4). The People alleged Andrews suffered two prior convictions that were "strikes" and serious prior offenses for purposes of sentencing. (§§ 667, subds. (a), (c), (e)(1), 1170.12, subd. (c)(1).)

A jury found Andrews guilty on counts 1 and 4 and found true the allegations that he suffered two prior convictions. In a bifurcated proceeding, the trial court found the prior convictions were "strikes." The trial court declared a partial mistrial because the jury was unable to return unanimous verdicts on counts 2 and 3, and the court subsequently granted the People's motion to dismiss those counts in the interest of justice. (§ 1385.) The trial court sentenced Andrews to state prison on count 1 for 25 years to life and a consecutive determinate sentence of four years on count 4.

Andrews timely appealed.

3

II.

FACTS

Garrison, a security officer at a Riverside Days Inn on Magnolia Avenue, was sitting at an outside table on his break when Andrews and a companion approached and sat down. After finishing his meal, Garrison got up and went back to his duties but soon realized he left his keys on the table. When he returned, Garrison saw the keys were gone. Footage from a security camera showed Andrews had taken the keys, so Garrison drove down Magnolia Avenue and found Andrews pushing a shopping cart about a block away. Andrews said he found the keys, tried to find Garrison, and placed the keys on top of an ice machine at the hotel. The two went back to the hotel but Garrison was unable to find the keys on or near the ice machine. Andrews denied that he had taken the keys and walked away. Garrison once again checked the footage from the security camera and the footage did not show that Andrews had walked to the ice machine.

Garrison followed Andrews down Magnolia Avenue on foot and asked about the keys. Andrews became agitated and started to swear, and he told Garrison to stop following him or he would "fuck [him] up." Andrews was standing about six feet away from Garrison, "hunched his shoulders up," "balled up his fists," and approached Garrison. Garrison started to walk away backward, and Andrews said he was from "Hoover," which Garrison knew was a criminal street gang in Los Angeles. Concerned for his safety, Garrison kept his distance as Andrews continued to walk down the sidewalk pushing his shopping cart. Garrison said he was going to call the police, but

4

Andrews said he did not care and continued to curse and look back at Garrison as he walked down the street.

Garrison followed Andrews for another block, at which point John Doe, who was frequently at the hotel, approached and asked what was happening. Doe offered to help retrieve the keys. Andrews stopped, grabbed glass beer bottles from the shopping cart, "cocked back his arm," and threw at least two of them at Garrison. Garrison "jerked" or "moved to the side just out of [the] way" and the bottles hit the ground and shattered. Andrews was about 26 feet away when he threw the bottles. After throwing the second bottle, Andrews stopped and said, "I told you to stop following me." Garrison said he just wanted his keys.

"A little bit later," Andrews reached into the shopping cart and grabbed some bricks.[1] Andrews walked back, "[a] little bit closer" to Garrison, "cocked back his arm," and threw about three bricks at Garrison. One "full brick" hit Garrison on his left shoulder and bicep. Garrison testified the brick did not hurt "too much" because he was "a big guy" (6 feet 1 inch tall, 340 pounds). However, Garrison testified Andrews was also a "big guy," and he threw the bricks "pretty hard" and with "some strength."

Doe told Andrews to give the keys back, and Andrews said to mind his own business. Andrews continued to walk more quickly down Magnolia Avenue. Doe and Garrison continued to follow Andrews. Doe then approached Andrews and the two got

---

[1] Garrison testified the bricks in question were "regular red type bricks" that might be used for a brick wall. He said the bricks were the "smaller ones, not the bigger one[s]" (presumably, by "bigger" Garrison referred to cinder block type bricks).

into a fistfight. Garrison kept his distance. Andrews walked away and threw more bricks and beer bottles at Garrison and Doe. The pursuit continued for another block, and Andrews walked back and threw a bottle that hit Doe. Andrews continued to walk down Magnolia Avenue, and Doe knocked the shopping cart over. Andrews became even more aggressive, lifted up his shirt, and pulled out a knife that was concealed in his waistband. He said to Garrison, "I'll fucking stab you." Andrews then walked toward Garrison and Doe and started swinging the knife. Garrison called the police, who responded and eventually arrested Andrews.

Andrews testified in his own defense and denied that he threw any bottles or bricks at Garrison and Doe.

III.

DISCUSSION

A. *Substantial Evidence Supports Andrews's Conviction for Assault with a Deadly Weapon*

"Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (§ 245, subd. (a)(1).)

"As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and

6

likely to produce, death or great bodily injury.' [Citation.]  Some few objects, such as

dirks and blackjacks, have been held to be deadly weapons as a matter of law; the

ordinary use for which they are designed establishes their character as such.  [Citation.]

Other objects, while not deadly per se, may be used, under certain circumstances, in a

manner likely to produce death or great bodily injury.  In determining whether an object

not inherently deadly or dangerous is used as such, the trier of fact may consider the

nature of the object, the manner in which it is used, and all other facts relevant to the

issue."  (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028-1029.)

In *In re B.M.* (2018) 6 Cal.5th 528 (*B.M.*), the Supreme Court clarified the law with

respect to assault with a deadly weapon when the object that was used is not an inherently

deadly weapon and distilled three principles to be applied in cases such as this one.

"First, the object alleged to be a deadly weapon must be used in a manner that is

not only 'capable of producing' but also '"*likely to produce* death or great bodily

injury."'  ([*People v.*] *Aguilar*, *supra*, 16 Cal.4th at p. 1029, italics added.)"  (*B.M*., *supra*,

6 Cal.5th at p. 533.)  The court rejected the People's argument that "'capable of

producing' and 'likely to produce' are essentially the same because the term '"likel[y]"'

has the same meaning as '"possib[le]."'"  (*Ibid*.)  Citing dictionaries, the court stated the

People's definition was "at odds with the ordinary meaning of 'likely.'"  (*Ibid*.)  And,

citing decisions holding felony child abuse "'likely to produce great bodily harm or

death'" (§ 273a) refers to abuse in situations where the probability of serious injury is

great, the court indicated the People's definition "is also inconsistent with how we have

treated the term 'likely to produce great bodily harm or death' elsewhere in the Penal Code."[2] (*B.M.*, at p. 533.)

"Second, the *Aguilar* standard does not permit conjecture as to how the object could have been used. Rather, the determination of whether an object is a deadly weapon under section 245[, subdivision ](a)(1) must rest on evidence of how the defendant actually 'used' the object." (*B.M.*, *supra*, 6 Cal.5th at p. 534.) "'[E]xcept in those cases involving an inherently dangerous weapon[,] the jury's decisionmaking process in an aggravated assault case . . . is functionally identical regardless of whether . . . the defendant employed a weapon alleged to be deadly as used or employed force likely to produce great bodily injury; in either instance, the decision turns on the nature of the force used.'" (*Id.* at p. 535.) Although the Supreme Court held "it is inappropriate to consider how the object could have been used as opposed to how it was actually used," the court made clear "it is appropriate in the deadly weapon inquiry to consider *what*

---

[2] In a separate concurring opinion, Justice Chin clarified the Supreme Court did "not decid[e] the meaning of the word 'likely' in the phrase '"capable of producing and *likely* to produce, death or great bodily injury."'" (*B.M.*, *supra*, 6 Cal.5th at p. 539 (conc. opn. of Chin, J.).) Justice Chin stated the court had only determined "'likely'" "means something 'more than a mere possibility.' (Maj. opn., *ante*, at p. 534; see *id*. at p. 535.)" (*B.M.*, at p. 539 (conc. opn. of Chin, J.).) Although the majority opinion had cited dictionary definitions of the word "'likely'" as meaning ""'having a high probability,'" "'very probable,'" or a ""'probability [that is] great,''""" to disprove the People's argument that "'likely' means 'probable,'" Justice Chin cautioned against reading the majority opinion as having adopted such definitions. (*Ibid.*) "Indeed, such a holding would be inconsistent with the majority's citations to *In re D.T.* (2015) 237 Cal.App.4th 693, *People v. Page* (2004) 123 Cal.App.4th 1466, and *People v. Simons* (1996) 42 Cal.App.4th 1100. (See maj. opn., *ante*, at p. 538.) Those cases all involved the use of a sharp object in a threatening manner, and in all three cases an argument could be made that great bodily injury was not *probable*, but the deadly weapon finding was nonetheless upheld." (*B.M.*, at pp. 539-540 (conc. opn. of Chin, J.).)

8

*harm could have resulted from the way the object was actually used.* Analysis of whether the defendant's manner of using the object was likely to produce death or great bodily injury necessarily calls for an assessment of potential harm in light of the evidence. As noted, a mere possibility of serious injury is not enough. But the evidence may show that serious injury was likely, even if it did not come to pass." (*Ibid*., italics added.)

"Third, although it is appropriate to consider the injury that could have resulted from the way the object was used," the Supreme Court cautioned "the extent of actual injury or lack of injury is also relevant." (*B.M*., *supra*, 6 Cal.5th at p. 535.) A conviction for assault with a deadly weapon does not require evidence of actual injury or contact, "but limited injury or lack of injury may suggest that the nature of the object or the way it was used was not capable of producing or likely to produce death or serious harm." (*Ibid*.)

"Our standard of review is well settled. 'We """must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."'" [Citations.]" (*People v. Koback* (2019) 36 Cal.App.5th 912, 919.)

"'""""Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances

reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.""""" [Citation.] "'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" [Citation.]" (*People v. Koback*, *supra*, 36 Cal.App.5th at p. 919.) ""'A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict."' [Citation.]" (*Ibid*.)

As indicated, *ante*, Garrison testified that, from about 26 feet away, Andrews "cocked back his arm" and threw at least two glass beer bottles and tried to hit Garrison. Garrison "jerked" or "moved to the side just out of [the] way," and the bottles hit the ground and shattered. When Garrison failed to give up the pursuit, Andrews walked back toward Garrison, "cocked back his arm," and threw three bricks. One "full brick" hit Garrison on the left shoulder and bicep. The brick did not hurt "too much" because Garrison was "a big guy," and he required no medical attention. However, Andrews was also a "big guy," and he threw the bottles and bricks "pretty hard" and with "some strength."

Andrews argues the record does not demonstrate the way in which he threw bottles and bricks at Garrison was likely to result in death or great bodily injury because Garrison kept his distance and the only brick that hit him caused no injury. But, while we must take into consideration actual injuries or lack thereof from an assault, we may also consider what injuries *could have* resulted from the way in which Andrews threw the

10

bottles and bricks.  (*B.M.*, *supra*, 6 Cal.5th at p. 535.)  To repeat, Andrews "cocked back his arm" and, with "some strength," threw three red bricks at Garrison.  Had one of the bricks struck Garrison squarely in the face or head—much more vulnerable parts of the body than the shoulder and bicep—it is more than a mere possibility that he would have suffered serious injury.

Moreover, the fact Garrison successfully dodged the two glass beer bottles (and two of the bricks) does not help Andrews.  Again, had either of the glass beer bottles struck Garrison in the face or head, it is more than merely probable he would have suffered serious injury.  "[A]n aggressor should not receive the benefit of a potential victim fortuitously taking a defensive measure or being removed from harm's way once an assault is already underway."  (*B.M.*, *supra*, 6 Cal.5th at p. 537; see *In re Raymundo M.* (2020) 52 Cal.App.5th 78, 90 [minor's "conduct is not excused merely because [the victim] took evasive action that thwarted the assault."]; *People v. Marsh* (2019) 37 Cal.App.5th 474, 486 ["That [the victim] discovered the severed brake lines before he drove the vehicle, and thus was not injured by defendant's act, is of no consequence for purposes of the offense of assault with a deadly weapon."]; *People v. Koback*, *supra*, 36 Cal.App.5th at p. 925 ["From the way defendant wielded the key, we conclude there was more than a mere possibility [the victim] would have suffered serious bodily injury if defendant had succeeded in striking him."].)

In sum, Andrews's conviction for assault with a deadly weapon is supported by substantial evidence.

B. *The Trial Court Had No Duty to Instruct on Unanimity.*

"As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty." (*People v. Jennings* (2010) 50 Cal.4th 616, 679.) "'The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.'" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

"On the other hand, where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*People v. Russo*, *supra*, 25 Cal.4th at p. 1132.) A unanimity instruction is not required where multiple related acts "'form the basis of a guilty verdict on one discrete criminal event.'" (*Id*. at p. 1135.) "In deciding whether to give [a unanimity] instruction, the trial court must ask whether (1) there is a risk the jury may divide on two discrete crimes and not agree on any particular crime, or (2) the evidence merely presents the possibility the jury may divide,

12

or be uncertain, as to the exact way the defendant is guilty of a single discrete crime. In the first situation, but not the second, it should give the unanimity instruction." (*Ibid*.)

Andrews argues that because the alleged assault on Garrison with the bottles was different from the alleged assault with bricks, the trial court was required to instruct the jury that it had to unanimously agree which of the two assaults was likely to result in death or great bodily injury. The People respond the trial court had no duty to instruct on unanimity and the error, if any, was harmless.[3] We find no error.

The trial court need not instruct a jury on unanimity when the defendant uses more than one weapon during a single, discrete assault. (E.g., *People v. Garcia* (2022) 76 Cal.App.5th 887, 896-897 [trial court did not commit error by failing to instruct jury it had to agree unanimously as to which of two weapons defendant used as the deadly weapon during "a single, discrete assault" on the victim "which lasted several minutes"; "the jurors were not required to unanimously agree that either was *the* deadly and

---

[3] As the People state in their brief, there is currently a split in authority whether the erroneous failure to instruct on unanimity is subject to federal harmless error analysis pursuant to *Chapman v. California* (1967) 386 U.S. 18 or state law analysis under *People v. Watson* (1956) 46 Cal.2d 818. But more than 20 years ago this court weighed in on that debate and decided such error is subject to *Chapman* harmless error analysis. (*People v. Wolfe* (2003) 114 Cal.App.4th 177, 185-188; accord, *People v. Hernandez* (2013) 217 Cal.App.4th 559, 576-577; see *People v. Lueth* (2012) 206 Cal.App.4th 189, 199 [finding failure to instruct on unanimity was harmless beyond a reasonable doubt.].) Absent a compelling reason to depart from that precedent, we will continue to apply the *Chapman* standard. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division."]; *People v. Allen* (2023) 96 Cal.App.5th 573, 581 ["We see no reason to depart from this court's precedent concerning the facial validity of Health and Safety Code section 11370.1 under the Second Amendment."].)

dangerous weapon, so long as they did unanimously agree that *a* deadly and dangerous weapon was used in the assault."].)

The record reflects a single, continuous assault to dissuade Garrison from pursuing Andrews down the street. First, Andrews got angry at Garrison, "balled up his fists" and threatened to "fuck [him] up." When Garrison did not give up the chase, Andrews reached into the shopping cart and threw two beer bottles at him but missed. Garrison continued to follow Andrews and demand the return of the keys. Finally, "[a] little bit later on," Andrews reached into the shopping cart and threw three bricks at Garrison, hitting him with one. Nothing in the record suggests there was any meaningful break in time between Andrews throwing the bottles and the bricks such that they should be considered discrete, separate assaults. (See *People v. Lueth*, *supra*, 206 Cal.App.4th at p. 196 [continuous course of conduct exception to unanimity rule applies when acts are so closely connected in time and place that the jury must either accept or reject victim's testimony in toto.].) Therefore, the trial court was not required to instruct on unanimity.

C. *Even If Andrews's Statement of Gang Membership Was Erroneously Admitted, He Suffered No Prejudice.*

"'[A]dmission of evidence of a criminal defendant's gang membership creates a risk the jury will improperly infer the defendant has a criminal disposition' and may have a highly inflammatory impact. [Citation.] Nonetheless, 'evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership,

14

signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime.' [Citation.] Such evidence is admissible even when a gang enhancement is not charged, provided the probative value of the evidence is not substantially outweighed by its prejudicial effect." (*People v. Ramirez* (2022) 13 Cal.5th 997, 1095.)

"'The word gang . . . connotes opprobrious implications. . . . [T]he word "gang" takes on a sinister meaning when it is associated with activities.'" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223.) Gang evidence should not be admitted "'if only tangentially relevant, given its highly inflammatory impact.'" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167.) "Even when it is relevant . . . 'courts should carefully scrutinize evidence of a defendant's gang membership because such evidence "creates a risk the jury will improperly infer the defendant has a criminal disposition and is therefore guilty of the offense charged."'" (*People v. Chhoun* (2021) 11 Cal.5th 1, 31.)

"We review a trial court's decision to admit or exclude evidence 'for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.' [Citation.] When evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error." (*People v. Powell* (2018) 5 Cal.5th 921, 951; see

*People v. Watson*, *supra*, 46 Cal.2d at p. 836; Cal. Const., art VI, § 13; Evid. Code, § 353, subd. (b).)

The People contend Andrews's statement that he was a member of the Hoover gang was properly admitted to prove motive—that Andrews intended to threaten and scare Garrison into giving up his pursuit of the keys and to leave Andrews alone. We need not decide whether Andrews's gang membership was properly admitted in this case. Even if we agree with Andrews that evidence of his gang membership was erroneously admitted, we find no prejudice.

As indicated, *ante*, the properly admitted evidence in the record amply demonstrates Andrews threw the bottles and bricks in a manner that was likely to result in great bodily injury. Had Garrison not successfully dodged the bottles and one hit him in the head or face, it is likely he would have suffered serious injury. Likewise, if the brick that struck Garrison's shoulder and bicep had instead struck his face or head, there is more than a mere possibility it could have caused significant injury.

Moreover, the jury's verdicts are compelling evidence Andrews's gang membership did not unduly sway the jury to convict him. Although the jury found him guilty of one count of assault with a deadly weapon for his use of bottles and bricks, it was unable to reach a verdict on the two counts of assault with a deadly weapon for Andrews's alleged use of a knife, resulting in the dismissal of those charges. As the People contend, the mixed verdict tends to show the jury was not overcome by passion or prejudice because of Andrews's gang membership, but instead carefully considered the

16

evidence.  (See *U.S. v. Morales* (10th Cir. 1997) 108 F.3d 1213, 1220 [mixed verdict "shows the jury carefully evaluated the evidence presented."].)  In other words, "It does not appear reasonably probable that the jury was influenced by such evidence to defendant's prejudice, or that the admission of such evidence affected the verdict." (*People v. Watson*, *supra*, 46 Cal.2d at p. 837.)

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.

17