Filed 6/25/26  P. v. Hicks CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br>v.<br>KENNETH HICKS,<br>         Defendant and Appellant. | A169319<br><br>(San Mateo County<br>Super. Ct. No. 23NF010929A) |

A jury found that appellant Kenneth Hicks committed a felony by attempting to prevent an executive officer from performing an official duty. (Pen. Code, § 69; statutory references are to this code unless otherwise indicated.)  On appeal, Hicks contends the judgment is not supported by the evidence and the trial court committed prejudicial evidentiary and instructional errors.  We affirm.

### BACKGROUND

Appellant was charged by felony information with one count of violating section 69.  "Section 69 makes it a crime to 'attempt[ ], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law' and to 'knowingly resist[ ], by the use of force or violence, the officer, in the performance of his or her duty.'  [Citation.]  Accordingly, there are two ways to violate

1

section 69." (*People v. Morgan* (2026) 19 Cal.5th 132, 139, quoting § 69, subd. (a) (§ 69(a)).) Appellant was tried on the first theory, that he attempted to deter or prevent an executive officer from performing an official duty.

***Trial Evidence***

The incident that led to this case occurred outside the San Francisco International Airport on June 27, 2023, at around 2:40 a.m., a time when access to the airport was restricted. Between 10:00 p.m. and 6:00 a.m., airport entry is limited to authorized personnel, ticketed passengers, or persons transporting ticketed passengers. These restrictions deter crime, including crime committed by trespassers and transients, which is a serious problem at the airport.

On the morning in question, San Francisco Police Officer Randy Tiffany went to a bus stop at the international terminal to meet a SamTrans bus. Appellant and a few other people alighted from the bus, and Tiffany informed them the airport was closed except to employees and ticketed passengers. Appellant told the officer he "was catching a flight to Vegas." Tiffany asked to see documentation of a booked flight, but appellant had none. Tiffany gave appellant the option of getting back on the bus or coming back after 6:00 a.m., but appellant "was not having it." Tiffany repeatedly told appellant that only ticketed passengers could enter the airport and appellant "got more and more agitated," to the point that he was belligerent and yelling at the officer.

Appellant told Tiffany, " 'I don't give a f***. I'm going in.' " Given the circumstances at that point, including appellant's escalating agitation, and expressed intention to enter the airport no matter the law, Tiffany was on alert of a potential security problem and told appellant that he was going to detain appellant to stop him from trespassing. Appellant replied, " 'F*** you.

2

Detain me.' " Tiffany requested identification, which appellant did not have, but he gave his name and date of birth. Tiffany contacted dispatch for a records check and requested backup. While Tiffany waited for the dispatch return, appellant became "fidgety" and "just started walking away." Tiffany told appellant he was detained and not free to leave, but appellant kept walking, heading directly toward the freeway. Tiffany repeated that appellant was not free to leave, but appellant was still saying " 'I'm going to walk off.' "[1]

At that point, Tiffany decided to put appellant in handcuffs. He grabbed appellant's arm, and said, " 'I'm going to put you in handcuffs.' " Appellant "ripped his arm away," telling the officer not to touch him, and stating " 'Touch me, I'll f*** you up.' " Tiffany responded that appellant was under arrest for threatening a police officer, and made another attempt to place appellant in handcuffs. Appellant reiterated, " 'Touch me again, watch, I'll f*** you up.' "

Officer Tiffany repeatedly directed appellant to turn around and put his hands behind his back, but appellant refused, squaring up to face Tiffany "with his hands balled into fists down by his waist in a challenging manner." Appellant's threats, physically aggressive behavior, and use of force to prevent being handcuffed, caused Tiffany to fear an attack, and given the circumstances, he elected to use his pepper spray. Tiffany told appellant, " 'I'm going to spray you in the face if you don't comply,' " as he pointed the cannister directly at appellant's face. Appellant responded, " 'F*** you.

---

[1] This incident was partially recorded on surveillance video admitted into evidence at trial. The record indicates that the video showed appellant as he got off the bus, and it showed his subsequent interaction with Tiffany up to the point that he walked away from the officer, who then followed him to an area that was not captured by the video.

Spray me.' " Tiffany attempted again to handcuff appellant without using force, but when appellant "squared off again," Tiffany sprayed one quick burst of the pepper spray into appellant's face. Appellant seemed shocked, and swore again, but he complied with Tiffany's directive to get down on the ground, and put his hands behind his back so that he could be handcuffed.[2]

At appellant's trial, the jury was told that when the altercation with Officer Tiffany occurred, appellant was on two grants of supervised probation and not permitted to leave Stanislaus County for more than 48 hours without the written consent of his probation officer, nor was he permitted to move out of the county without prior permission. Appellant also stipulated that he had neither consent to leave or to move out of Stanislaus when he was arrested at the airport.

### *Jury Verdict and Sentence*

The court used CALCRIM No. 2651 to instruct on the charge appellant violated section 69. The jury was instructed the People had the burden of proving four elements: "1. The defendant willfully and unlawfully used violence or a threat of violence to try to prevent or deter an executive officer from performing the officer's lawful duty; [¶] 2. When the defendant acted, he intended to prevent or deter the executive officer from performing the officer's lawful duty; [¶] 3. A reasonable listener in a similar situation with similar knowledge would interpret the threat, in light of the context and surrounding circumstances, as a serious expression of intent to commit an act of unlawful

---

[2] By that time, San Francisco Police Officer Darnell had responded to Tiffany's request for backup. As Darnell approached the scene from about 20 feet away, he could see appellant was in an "aggressive stance, like a fighting stance, towards Officer Tiffany." Darnell pulled out his baton, "ready to take action," but then faded back because Tiffany was taking the lead and indicated that he intended to use the pepper spray.

force or violence; [¶] AND [¶] 4. When the defendant acted, he knew that the person was an executive officer."

On September 29, 2023, the jury found appellant guilty of "Trying to Prevent an Executive Officer from Performing Duty in violation of Penal Code section 69, a felony." After the jury was excused, appellant admitted a prior strike conviction. Appellant waived a jury trial as to aggravating factors, and the court found true an allegation he was on probation when he committed the instant offense. (§ 1170, subd. (b)(2).)

Appellant was sentenced on November 17, 2023. The court denied motions to reduce the conviction to a misdemeanor and to dismiss the strike prior. The court imposed a midterm sentence, doubled because of the strike, resulting in an aggregate four-year prison term.

## DISCUSSION

### I. The Trial Evidence Supports the Jury's Verdict

In assessing appellant's insufficiency of the evidence claim, we review the record in the light most favorable to the prosecution to determine whether substantial evidence supports a finding by a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt. (*In re Manuel G.* (1997) 16 Cal.4th 805, 822 (*Manuel G.*); *People. v. Iboa* (2012) 207 Cal.App.4th 111, 117 (*Iboa*).)

We are concerned here with the first way of violating section 69, which occurs when a defendant attempts by threat or violence to deter or prevent an officer in the performance of his or her official duty. (§ 69(a).) A "threat" in this context means "a threat of unlawful violence in an attempt to deter the officer." (*Iboa*, *supra*, 207 Cal.App.4th at p. 118; see also *Manuel G.*, *supra*, 16 Cal.4th at p. 815.) A violation may be established by a "threat, unaccompanied by any physical force." (*Manuel G.*, at p. 814.) Moreover,

5

section 69 does not require a showing that the defendant had the present ability to carry out the threat. (*People v. Nishi* (2012) 207 Cal.App.4th 954, 968.) However, "there must be sufficient evidence [defendant] threatened unlawful violence." (*Iboa*, at p. 119.) In addition, this method of violating section 69 " 'requires a specific intent to interfere with the executive officer's performance of his duties,' " which may be established by the surrounding circumstances. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 195; see also *In re M.L.B.* (1980) 110 Cal.App.3d 501, 503.)

Guided by these principles, we conclude substantial evidence supports appellant's conviction. The jury could have found from the evidence that appellant intentionally used threats of violence to try to prevent Officer Tiffany from detaining him because appellant feared being sanctioned for violating the terms of his probation. Appellant resists this conclusion, arguing that (1) he did not use force while resisting Tiffany, and (2) his "utterances did not rise to the level of a 'true threat.' "

Contrary to the first prong of appellant's argument, Officer Tiffany testified that appellant "ripped his arm away" from the officer's grip. The People characterize such conduct as violence, to which appellant offers no response in his reply brief. Regardless, appellant's forceful pulling away from the officer was one of several undisputed facts relevant to prove that he threatened unlawful violence. The record also shows that after appellant was told that he was being detained, he faced off with the officer as if preparing to fight; and after Tiffany grabbed appellant's arm, he repeatedly stated that if Tiffany touched him or tried to place him in cuffs, then appellant would f*** the officer up.

Turning to appellant's second contention, he argues that his statements to Tiffany did not constitute threats of violence within the meaning of section

6

69 because they were ambiguous and not " 'true' " threats.  Contending that only true threats are categorically excluded from First Amendment protection, appellant argues this court must make an independent determination as to whether his statements to Tiffany constituted protected speech.  (Citing *In re George T.* (2004) 33 Cal.4th 620, 634 (*George T.*).)

"To avoid the risk of punishing protected First Amendment speech," the term " "threat' " in section 69 has been construed "to mean a threat of unlawful violence used in an attempt to deter the officer."  (*Manuel G.*, *supra*, 16 Cal.4th at pp. 814–815.)  When a defendant raises a plausible First Amendment defense to a section 69 charge, the appellate court makes an independent examination of the record to determine whether the communication at issue constitutes a true criminal threat.  (*People v. Smolkin* (2020) 49 Cal.App.5th 183, 188; Cf. *George T.*, *supr*a, 33 Cal.4th at p. 634.)  Although appellant fails to show he raised a plausible First Amendment defense, we independently consider the constitutional issue.

True threats that fall outside the First Amendment's protection have been defined by our federal and state supreme courts to " 'encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual.' " (*People v. Lowery* (2011) 52 Cal.4th 419, 424.)  " 'The speaker need not actually intend to carry out the threat.' " (*Ibid*.)  However, when considered in context and in light of the surrounding circumstances, the statement must be such that a reasonable listener would understand it as a serious expression of an intent to commit an act of unlawful violence "rather than an expression of jest or frustration." (*Id*. at p. 427.)

Applying these criteria, we reject appellant's claim that his statements did not constitute true threats.  Appellant was angry and belligerent, took a

forward-facing fighting position when asked to turn around and be handcuffed, and instead of complying with the officer's repeated directives, appellant threatened repeatedly to f*** up the officer. Appellant's statements, considered in context, support finding that he not only intended to threaten unlawful violence but also that a reasonable listener in the officer's position would understand the threats as such.

Appellant contends his remarks were not true threats because he was simply employing a "common communication method" to convey his desire to walk away from the officer. According to this argument, the threat of violence was merely conditional, and appellant's only real intent was to leave the airport, as the officer had previously invited him to do. This logic ignores the relevant contextual facts. "[C]onditional threats are true threats if their context reasonably conveys to victims that they are intended." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137.) Appellant delivered his threats after he was informed he was not free to leave, and that Tiffany intended to put him in handcuffs. His threat to "f***" up Tiffany if Tiffany touched him was a pithy statement that he intended to cause Tiffany physical harm if the officer continued with his declared course of conduct. Appellant's acknowledgement on appeal that his ultimate goal was to extricate himself from the situation is not only consistent with, but reinforces, the finding that appellant's remarks constituted a serious expression of his intent to use the threat of unlawful violence to prevent the officer from performing his official duties.

## II. Evidence Issues

Appellant contends the trial court made prejudicial errors by admitting irrelevant and unduly prejudicial evidence in violation of Evidence Code section 352 (section 352). We review the challenged rulings for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)

8

## A. Appellant's Probation Status

Prior to trial, the People moved for an order permitting evidence that, at the time of the incident, appellant was on probation "with travel restrictions," and was also the subject of two active arrest warrants. Appellant objected this was improper bad character evidence, not relevant to any disputed issue. The prosecutor countered the evidence was relevant to show appellant intended to deter Officer Tiffany; that appellant wanted to get away because the officer was about to learn about appellant's probation status and outstanding warrants. The prosecutor clarified she did not intend to disclose details about appellant's underlying offenses and suggested his probation status and travel restrictions could be handled via a stipulation.

The trial court granted the People's motion only in part. It found appellant's probation status was admissible to show that he was attempting to deter the officer from performing a duty in connection with the detention and arrest, but information about appellant's active arrest warrants would not be admitted because appellant may not have known about them when the incident occurred.

Contending on appeal that the trial court violated section 352, appellant makes three flawed arguments. [3] First, appellant contends that the fact he was on supervised probation was not relevant to any element of a section 69 offense. Appellant lists the elements set forth in CALCRIM No. 2651, and explains why he believes his probation status was irrelevant to *some* elements, such as whether he knew Tiffany was a police officer. However, this evidence was admitted for a specific purpose—because it was

---

[3] Appellant argues the alleged violation of section 352 was so egregious that it violated his due process rights. (Citing *People v. Partida* (2005) 37 Cal.4th 428, 438–439.) Since appellant fails to show any error under section 352, his due process claim necessarily fails.

probative of appellant's intent to interfere with the officer's performance of an official duty—and appellant fails to provide any reason for disputing that theory of relevancy. "When a trial court clearly relies on a stated rationale for its ruling, the party challenging that ruling fails to rebut the presumption of correctness if it does not make some effort to address the court's rationale on appeal." (*People v. Benson* (2025) 110 Cal.App.5th 1068, 1078, fn. 2.)

Next, appellant argues the trial court's acceptance of the prosecutor's theory of relevancy constituted prejudicial error. According to this argument, admitting evidence of appellant's probationary status could not "possibly show" that appellant intended for Tiffany to perceive appellant's remarks as true threats since Tiffany did not know appellant was on probation when those remarks were made. Again, appellant fails to address the correct issue. This evidence was neither offered nor admitted to prove how a reasonable person would perceive appellant's threatening remarks. Evidence appellant was violating conditions of his parole was relevant to show his intent to prevent or deter Tiffany from performing his official duties, which was an element of the charged offense.

Finally, appellant contends this evidence was highly prejudicial because there "was a significant danger" the jury would construe it as proof that appellant "was a violent and dangerous person." We disagree. The jury learned only that appellant was on probation, not the crimes that appellant committed or the fact that two arrest warrants had been issued, thus limiting the potential for undue prejudice. Appellant fails to show that the court abused its discretion under section 352 by admitting this evidence as probative of an element of the charged offense.

**B. Evidence Regarding Criminal Activity At the Airport**

Appellant contends the trial court committed reversible error by permitting the prosecution to present allegedly irrelevant testimony about criminal activity at the airport. Acknowledging this issue was not preserved below, appellant contends that his trial counsel's failure to object to the testimony constituted ineffective assistance of counsel.

**1. Additional Background**

Michael Guldner, a detective with the San Mateo Sheriff's Office, was called to testify during the People's case. Guldner, who was assigned to the investigation unit at the airport, provided the jury with background information about the types of crimes committed at the airport and the nature of law enforcement operations there. He described the area of the airport where appellant was detained, discussed security concerns associated with the Caltrans bus stop, and explained the role of surveillance cameras in that area of the airport. When asked specifically about trespassing at the airport, Guldner responded that it was a "tremendous problem, especially with a large homeless population and other populations of people who want to come there to do criminal acts," and that the problem was more acute overnight.

Guldner was asked why it is important that only authorized people are in the airport during nighttime hours, and gave this response: "The airport is actually closed for business during the hours of 10:00 p.m. and 6:00. And the reason for that, and trying to not allow traffic in there, is because of that. The ticket counters are closed at that time. The restaurants are closed at that time. So the only people who should be doing business in the airport are people that either work there or are ticketed passengers or delivering people who are ticketed passengers to and from the airport. It tremendously cuts

11

down on vagrancy of people who are just using it for a place to stay as a shelter, and then look around, prey on victims, those people who are actually waiting for connecting flights. So there's no way to purchase tickets there at the airport, since there is no ticket counters that are currently open at that time."

Under cross-examination, Guldner confirmed that most airlines allow customers to purchase tickets over the phone or internet "pretty routinely." He testified that he received a telephone message notifying him of the incident involving appellant, but he did not participate in the investigation of the incident involving appellant, had never met appellant, and did not investigate his history.

### 2. Analysis

Appellant contends the trial court violated section 352 by admitting Detective Guldner's testimony that "the airport was closed during off hours because trespassing was a 'tremendous problem, especially with a large homeless population,' " and that a " 'great number of people' " came to the airport to charge their phones and steal things. According to appellant, Guldner's testimony was not only irrelevant and highly prejudicial, it should have been excluded under Evidence Code section 1101, as it was the "equivalent of introducing propensity evidence, which is specifically prohibited under Evidence Code section 1101, subdivision (a)."

Since appellant did not object to Guldner's testimony at trial, we consider whether his trial counsel's failure to object constituted ineffective assistance of counsel. The decision " 'whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.' " (*People v. Carrasco* (2014) 59 Cal.4th 924, 985.) " 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide

12

range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' [Citations.] When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was ' " 'no conceivable tactical purpose' " ' for counsel's act or omission." (*People v. Centeno* (2014) 60 Cal.4th 659, 674–675.)

As an initial matter, we reject appellant's contention that this testimony was irrelevant. Guldner's testimony explained Officer Tiffany's role at the airport and the duties he was performing when he encountered appellant. Without it, jurors familiar with airports only during daytime and early evening hours might have been concerned that Tiffany did not have a legitimate basis for attempting to prevent appellant from entering the airport in the middle of the night. The trial court could reasonably have concluded that evidence about criminal activity at the airport was relevant to establish that Officer Tiffany was performing a law enforcement duty by requiring people—including appellant— to comply with airport entry restrictions.

Appellant's contention that this evidence was highly prejudicial and subject to exclusion under Evidence Code section 1101, subdivision (a) (section 1101(a)) is also wrong. Section 1101(a) provides that evidence of a person's character or trait is inadmissible when offered to prove his or her conduct on a specific occasion. Detective Guldner's testimony had nothing to do with appellant or his character. Indeed, he testified unequivocally that he did not know appellant or participate in the investigation of the incident that gave rise to this case.

Under these circumstances, appellant fails to carry his burden to prove trial counsel rendered ineffective assistance. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463 [representation not deficient "for failing to make meritless

13

objections"]; *People v. Cudjo* (1993) 6 Cal.4th 585, 616 [absent "sound legal basis for objection," failure to object to evidence "cannot establish ineffective assistance"].) "The record fails to demonstrate affirmatively that counsel's omissions were not based upon a rational tactical basis, such as the reasonable assumption that such objections would be overruled." (*People v. Samayoa* (1997) 15 Cal.4th 795, 848.)

Even if some aspects of the detective's testimony were objectionable, appellant also fails to prove prejudice. It is not reasonably probable he would have obtained a more favorable result if his trial counsel had objected to the detective's testimony. (See, e.g., *People v. Garlinger* (2016) 247 Cal.App.4th 1185, 1193 [appellant's burden to " ' "show prejudice flowing from counsel's performance or lack thereof" ' "].)

## III.  Jury Instruction Issue

In a supplemental brief, appellant claims the trial court violated a sua sponte duty to instruct the jury that in order to convict appellant of violating section 69, jurors had to unanimously agree on which act or acts constituted the offense. "In criminal cases ' "[a] trial court has a duty to instruct the jury 'sua sponte on general principles which are closely and openly connected with the facts before the court.' " ' " (*People v. Canizalez* (2011) 197 Cal.App.4th 832, 850.) A claim that the court violated this duty is reviewed de novo. (*Ibid.*)

In this case, the jury was instructed, pursuant to CALCRIM No. 3550, that "Your verdict must be unanimous," meaning that "all of you must agree to it." Appellant contends, however, that an additional unanimity instruction was required under the facts of his case. There are two parts to this argument. First, appellant points out that section 69 provides that the crime of attempting to prevent an officer from performing an official duty can be

14

committed in more than one way—by violence or threat of violence—and that the CALCRIM instruction setting forth the elements of this offense permits a jury to base a conviction on either of the alternative means of violating the statute. Second, appellant argues that when the prosecutor chooses to present evidence of more than one act that may constitute the charged offense, the trial court has a sua sponte duty to instruct "the jurors they need to unanimously agree on which act their verdict is based." (Citing *People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) This principle applies here, appellant contends, because there was evidence he used force to pull his arm from Officer Tiffany's grip, the Attorney General has characterized that conduct as violence in his respondent's brief, and thus it is not clear whether appellant was convicted for using violence or threats to attempt to prevent Officer Tiffany from performing his duty. We reject this argument because appellant misconstrues the pertinent law.

In a criminal case, "the jury must agree unanimously the defendant is guilty of a specific crime." (*Russo, supra*, 25 Cal.4th at p. 1132, italics omitted.) Therefore, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid*.) However, "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed . . . , the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty." (*Ibid.;* see also *People v. Lueth* (2012) 206 Cal.App.4th 189, 196–197 (*Lueth*).)

Consistent with these settled principles, when "a statute prescribes disparate alternative means by which a single offense may be committed, no unanimity is required as to which of the means the defendant employed so

15

long as all the members of the jury agreed that the defendant has committed the offense as it is defined by the statute." (*People v. Sutherland* (1993) 17 Cal.App.4th 602, 613; see, e.g., *People v. McLemore* (1994) 27 Cal.App.4th 601, 606 [irrelevant whether defendant obtained property by trick or intimidation when end result was that he left store with property he had not paid for].) Moreover, no unanimity instruction is required when the defendant has been charged with a single count of violating a statute that contemplates a continuous course of criminal conduct, either by " 'a series of acts [committed] over a period of time,' " or by acts that " 'are so closely connected in time as to form part of one transaction.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 679 (*Jennings*); see *Lueth, supra*, 206 Cal.App.4th at p. 196.)

Here, appellant was charged with a single violation of section 69, and he was tried on the single theory that he attempted to prevent an executive officer's lawful performance of a duty. To unanimously agree that appellant committed this offense, the jury did not have to unanimously agree as to the manner in which the offense was committed. (*Russo, supra*, 25 Cal.4th at p. 1132.) Moreover the trial evidence upon which the jury based the verdict related to only one incident, involving only one officer. Thus, even if appellant's conduct could be parsed into discrete criminal acts, those acts were so closely related as to constitute a single course of conduct in violation of section 69. (*Jennings, supra*, 50 Cal.4th at p. 679.)

In his reply brief, appellant mistakenly relies on *People v. Castaneda* (1997) 55 Cal.App.4th 1067. In that case, the evidence disclosed two discrete ways the defendant could have violated a drug possession charge: either by constructively possessing heroin found on his television set; or by actually possessing other heroin that was later found in his pocket when he was

16

searched at the sheriff's station. (*Id*. at pp. 1070–1071.) Because the possessions were factually distinct and the defendant offered separate defenses as to each act, the court was required to instruct that the jury had to unanimously agree on which act constituted the offense. (*Id*. at p. 1071.) Here by contrast, appellant's conduct during his encounter with Officer Tiffany was the sole basis for the section 69 charge, the acts by which appellant attempted to prevent Tiffany from performance of an official duty were not factually distinct, and appellant did not provide separate defenses.

Appellant acknowledges no unanimity instruction is required when a charge is based on a continuous course of conduct, but he argues that in this case the trial evidence presented two "divergent factual circumstances": first, that appellant resisted Tiffany by way of a verbal threat; and second, that appellant used violence after Tiffany grabbed him. As our factual summary reflects, appellant pulled his arm free of Tiffany's grip just before or in conjunction with making a verbal threat of violence. Recounting the incident for the jury, the officer testified, "I grabbed his arm and [he] pulled it away, and that's when he said, 'Touch me, I'll f*** you up.' " The record thus belies appellant's contention that the jury was presented with "divergent" factual circumstances. He fails to show that an additional unanimity instruction was required under the facts presented by this record.

**DISPOSITION**

The judgment is affirmed.

TUCHER, P. J.

WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

17
